George R. JOSLYN, George R. Joslyn and Dorothy Joslyn, and George R. Joslyn, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 11490.

United States Court of Appeals Seventh Circuit.

March 12, 1956.

872

Alvin G. Hubbard, Chicago, Ill., Hubbard, Hubbard & Dorgan, Chicago, Ill., of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Tax Division, S. Dee Hanson, Atty., U. S. Dept. of Justice, Washington, D. C., Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review three decisions of the Tax Court, entered February 16, 1955, sustaining the Commissioner's determination of deficiencies in the income tax of petitioners for the taxable years 1942, 1943, 1944, 1945, 1946 and 1948. While there are three deci-

sions under attack, they all relate to the same subject matter and in the main are concerned only with George R. Joslyn, one of the petitioners, who will subsequently be referred to as petitioner.

Petitioner and Charlotte C. Joslyn (hereinafter referrred to as Charlotte) were married August 18, 1928. Four children were born of the marriage, who during the years in issue were minors. On October 1, 1940, in a proceeding in the Superior Court of Cook County, Illinois, a decree was entered divorcing Charlotte from petitioner. By the terms of this decree, petitioner was required to pay $100 each month to Charlotte "for her alimony" and also to pay Charlotte "as and for the support of the said four minor children, $100 for each of said children, that is the aggregate sum of $400 for the support of said children each and every month."

The obligations of petitioner to Charlotte and the minor children were altered by court decree both as to amount and form on numerous occasions in the years that followed, by the same court which entered the original decree. Such orders were entered December 15, 1942, March 16, 1944, and December 29, 1947. Furthermore, a written agreement was entered into on June 14, 1946, between petitioner and Charlotte, by which petitioner consented to the entry of a consent decree relative to his obligation to make payments to Charlotte. By reason of the terms of these subsequent decrees, as well as the agreement of June 14, 1946 between the two parties, petitioner during the years at issue paid Charlotte large sums for her support and maintenance and that of the minor children.

The contested issues in the main arise from petitioner's contention that the Tax Court erroneously decided that he was not entitled to deduct from his gross income for the various years at issue certain payments made by him to Charlotte. Petitioner's contention is predicated upon Section 23(u) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23, in connection with Section 22(k) of the same Code. These sections have recently been set forth in our opinion in Mandel v. Commissioner, 1956, 7 Cir., 229 F. 2d 382, and in the interest of brevity will not be repeated. We think there is no dispute but that petitioner's right under 23(u) to deduct payments made to Charlotte is dependent upon her obligation under 22(k) to include such payments in her gross income.

The record presents no serious question but that all of the payments made by petitioner for the years at issue were made under a decree of court or a written instrument in discharge of a legal obligation, except some of the payments made for the years 1942, 1943, and the first two months of 1944. The principal challenge of the Commissioner is that the payments in controversy for the years 1944, 1945, 1946 and 1948, come within a provision contained in 22(k) (hereinafter referred to as the child support provision), which reads as follows:

"This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * * "

It is obvious that if payments made by petitioner come within the terms of this provision, there was no obligation on the part of Charlotte to include them in her gross income and, consequently, no right on the part of petitioner to deduct under 23(u).

It is asserted by petitioner that all payments made to Charlotte, for which deductions have been sought under 23 (u), were included in her gross income as required by 22(k). Respondent denies this assertion, but at the same time states in his brief, "The record clearly shows, however, that the taxpayer was required to reserve sufficient funds out of such monthly payments and to pay the income taxes thereon in her behalf under those supplemental decrees." In the discussion to follow we shall again refer to

this subject matter, but at this point we observe that it is not discernible how it makes any difference in the application of 22(k) and 23(u) as to whether the income tax on payments made by petitioner to Charlotte was paid directly by her or by petitioner on "her behalf."

We think that the payments in controversy may appropriately be divided into two categories, (1) payments made during 1942, 1943 and in January and February 1944, and (2) payments made in the last ten months of 1944, 1945, 1946 and 1948. This is so for the reason that payments made during the period listed in the first category were made either under the original decree of October 1, 1940, or the decree entered December 15, 1942. We have already noted that under the original decree of 1940, petitioner was obligated to pay Charlotte $100 per month "for her alimony" and $400 per month "for the support of said children." By the 1942 decree petitioner was required to pay Charlotte $1,000 per month for a period of three years and thereafter $500 per month until the further order of the court. There was no apportionment of the payments as between alimony and child support. However, the decree contained the following provision:

"It Is Further Ordered, Adjudged and Decreed that George R. Joslyn may at his election discontinue to make the payments herein next above ordered and revert to the decree entered herein on October 1, 1940 and that upon such discontinuance the said George R. Joslyn shall thereafter make the payments as provided in the said decree of October 1, 1940."

For the year 1942, petitioner claimed a deduction of $2,100, eleven $100 payments made under the 1940 decree and a $1,000 payment made in December under the 1942 decree. The Tax Court allowed a deduction of $1,200. For the year 1943, petitioner paid $1,000 for each of the first four months and $500 for each of the remaining eight months. In August of that year he served written

notice on Charlotte that he would cease to pay under the 1942 decree and would pay under the original decree of 1940. Petitioner claimed a deduction of $6,000 for 1943, of which $1,200 was allowed by the Tax Court. In January and February 1944, petitioner paid Charlotte $500 per month, also under the original decree of 1940. The Tax Court allowed a deduction of $100 per month for these two months of 1944.

We agree with the Tax Court that petitioner was entitled only to a deduction of $100 per month for payments made during 1942, 1943, and for January and February 1944. Certainly petitioner was entitled to nothing more on account of payments made under the 1940 decree because, of such payments, only $100 per month was allotted as alimony to Charlotte and the remaining $400 per month as support for the children. The latter payments were squarely within the terms of the "child support provision" contained in 22(k). And we agree with the Tax Court that the payments made under the 1942 decree fall in the same category for the reason that the decree expressly authorized petitioner "at his election" to discontinue payments under the 1942 decree and to make payments as provided in the 1940 decree. Thus, the 1942 decree did not alter the legal obligation imposed upon him by the 1940 decree and, as already pointed out, under that decree he was only obligated to pay Charlotte as alimony $100 per month. Obviously, Charlotte could not have enforced monthly payments of $1,000 under the 1942 decree, when petitioner had the right at his election to revert to the 1940 decree. One of the requisites of 22(k) is that a payment must have been made in discharge of a legal obligation. In our view, the payments made during the period under discussion in excess of $100 per month did not meet that test.

Payments which we have listed in the second category, that is, those for the last ten months of 1944, 1945, 1946 and 1948, were made under decrees entered by the court on March 16, 1944 and De-

cember 29, 1947, and to a limited extent under the written agreement between the parties, dated June 14, 1946. While both of these decrees as well as the agreement require payments to Charlotte in a lump sum without any apportionment as between alimony and support for the children, the Tax Court reasons and concludes that these decrees, the same as the 1942 decree, must be construed in connection with the 1940 decree and that because that decree apportioned the payments, one-fifth to Charlotte as alimony and four-fifths to her for support of the children, all payments made under the 1944 and 1947 decrees should be likewise apportioned.

The Tax Court apparently entertains some doubt because it states in its opinion:

"However, we do not think that it necessarily follows that merely because under the original decree the payment for alimony was one-fifth of the total monthly payments to be made by petitioner and the payment for support of the children was four-fifths of such total monthly payments, it is to be presumed that such proportions are to be applied to the payments made by petitioner under amendatory decree in which payment was ordered of one specified monthly amount to determine the portions thereof that were for alimony and for support of the children."

The Tax Court, however, continues:

"Such determination is to be made on the basis of all the evidence bearing on the question, including the terms of the original and amended decrees, as well as the reasons prompting the court to decree the amended sum. However, where, as here, the evidence does not show that the payments of one specified amount monthly for both alimony and support of the children ordered by the amendatory decrees were intended to be in proportions other than specified for such purposes in the original decree, and where, as here, petitioner does not show a different application of the funds paid under the amended decrees, and where there is no apparent intention of the decreeing court to the contrary, the proportions ordered by the original decree are to be applied. Accordingly, we hold that one-fifth of the monthly payments under the amendatory decrees is to be regarded as alimony and four-fifths as support for the children."

■ We do not agree either with this conclusion or with the reasoning by which it is reached. These decrees are designated by the Tax Court and the Commissioner as "amended decrees." While we do not think it material as to the manner in which they are characterized, there is nothing in either decree which indicates it is an amendment of the 1940 decree. Under the Illinois statute, Ill.Rev.Stat.1953 (State Bar Ed.) Chapter 40, § 19, it is provided that a court in connection with a decree for divorce may on application "make such alterations in the allowance of alimony and maintenance, and the care, custody and support of the children, as shall appear reasonable and proper." The decrees, therefore, are properly characterized as "altered decrees" rather than "amended decrees." See Herrick v. Herrick, 319 Ill. 146, 152, 149 N.E. 820.

On January 14, 1944, Charlotte filed in the State Court a "Petition to Increase Alimony." After reference to the amount provided by the 1940 decree, the petition alleged that it "is not a sufficient amount to support and maintain plaintiff and said four minor children in a manner befitting their station in life and the income and property of defendant." The petition recited the amount which had theretofore been expended on behalf of the children, with an itemized statement of the payments received from petitioner. It showed the increased cost of living and stated, "that plaintiff has become liable to pay income taxes upon the alimony paid to her which was not

payable under the federal income tax laws on the date said divorce decree was originally entered, the amount of said federal income taxes so paid by plaintiff in the year 1943 being $1,614.05 * * *." (It will be noted that under the Tax Court decision petitioner was only required in 1943 to include in her gross income $1,200.) The petition prayed for an increase in the "alimony and support money allowed to plaintiff from defendant."

On March 16, 1944, the court entered an "order" by which petitioner was obligated to pay Charlotte "for her support and maintenance and the support and maintenance of the four children of the parties hereto and in complete discharge of any claims under the consent order of December 16, 1942, * * * the sum of $1,000.00 per month, beginning on the 15th day of April, A.D. 1944, and $1,000.00 on the 15th day of each month thereafter for the period hereinafter specified, and said payments shall be made in the manner as hereinafter provided * * *." The order provided that petitioner "shall pay $500.00 directly to said Charlotte C. Joslyn to be used by her for her support and maintenance and for the support and maintenance of the four children of the parties, and the other $500.00 per month, after making reservation for income taxes as hereinafter provided, shall be applied for the benefit of Charlotte C. Joslyn by payment by George R. Joslyn directly to the creditors of Charlotte C. Joslyn in satisfaction and discharge of the bills of Charlotte C. Joslyn * * *." Then followed a long list of creditors, together with the amounts owing by Charlotte to each. The order further provided that "from the said second $500.00 out of each $1,000.00 per month, the said George R. Joslyn shall reserve and set aside prior to the payment of any of the bills hereinabove listed a sum sufficient to pay such income taxes as shall be due upon each gross one thousand dollar monthly installment to the Collector of Internal Revenue of the United States, on account of income taxes of Charlotte C. Joslyn," and that petitioner pay such taxes "for the use and benefit of Charlotte C. Joslyn and upon her direction."

On June 14, 1946, petitioner and Charlotte entered into a written agreement which provided for "increasing Charlotte's present alimony allowance of $500.00 a month to $1,000.00 a month from January 1st, 1946, to December 31st, 1946, and thereafter for three years until December 31st, 1949, said alimony allowance to be at the rate of $800.00 per month."

In the meantime, another petition had been filed by Charlotte for an increase in the "allowance of alimony and support money." As a result, a "Supplemental Order" was entered by the court on December 29, 1947. The order provided:

"That, due to change in conditions in reference to the parties hereto since the entry of the last alimony and support money order herein, the amount the defendant, George R. Joslyn, should be required to pay the plaintiff, Charlotte C. Joslyn, as and for alimony for the year 1947 is Nineteen Hundred Sixteen Dollars and Sixty-seven Cents ($1,916.67) a month, and that thereafter defendant should pay to plaintiff as and for her alimony the sum of Nine Hundred Fifty Dollars ($950.00) a month, and such amounts are hereby fixed as the amount of alimony to be paid by said defendant to said plaintiff until further order of court. And it appearing to the court that said defendant has heretofore made no payments as and for alimony during the year 1947, It Is Ordered that the defendant immediately pay to the plaintiff the sum of Twenty-three Thousand Dollars and Four Cents ($23,000.04) as and for alimony for the entire year 1947."

The order recited that this increased allowance for the year 1947 was made in part because of a balance due upon her federal income tax for 1946 in the amount of $2,500, and the amount esti-

mated as her federal income tax for 1947, in the amount of $7,000. The order provided that the $23,000.04, which petitioner was ordered to pay, be placed in trust with directions as to its distribution, all to be made either to Charlotte or on her behalf. It was ordered that commencing with January 15, 1948, petitioner pay Charlotte "the sum of Nine Hundred Fifty Dollars ($950.00) as and for her alimony for the month of January 1948," and a like sum on the 15th day of each month thereafter until the further order of the court. The order also provided that petitioner reserve one-twelfth of such monthly payments for the purpose of paying on behalf of Charlotte income taxes resulting from alimony payments to her and, further, that $150 of each monthly payment be turned over to the trustee for the purchase of an annuity for the benefit of Charlotte. In this order it was also provided that Charlotte should not incur any credit obligations which she could not meet out of the allowance provided and that in the event she did, petitioner was no longer liable to make payments as provided for in the order. There is no proof that Charlotte violated this provision. It will be noted that under this order all payments are designated as "alimony" for Charlotte; child support is not mentioned.

Under the circumstances thus related, we think there is no basis for reasoning that it was the intention of the parties or the court that the payments made under either the 1944 or the 1947 decree be apportioned as between alimony for Charlotte and support for the children. Indeed, both decrees by clear language evidence a contrary intention. In the 1944 decree, the payments are again and again referred to as lump sum payments for the support and maintenance of Charlotte and the four children, and the 1947 decree, as noted, characterizes all payments as "alimony" for Charlotte.

A circumstance which clearly refutes any intention on the part of the parties or the court that payments made under the 1944 and 1947 decrees or under the 1946 agreement were to be apportioned as between alimony for Charlotte and support for the children is found in the treatment accorded the income tax consequences following such payments. Such treatment is inconsistent with the theory of the Tax Court that only one-fifth of such payments was intended as alimony to Charlotte and four-fifths as support for the children, as was provided in the original decree of 1940. Illustrative is the 1947 decree which provided that of the payments which petitioner was required to make, $2,500 was for the purpose of paying Charlotte's federal income tax for 1946, and $7,000 for her federal income tax for 1947. Following the 1940 apportionment, however, the Commissioner allowed petitioner to deduct only $1,200 for payments made to Charlotte during 1946. The Tax Court for the year 1946 increased petitioner's allowable deduction to the sum of $2,900, based upon the same 1940 apportionment, that is, allowing to petitioner 20% of the payments made that year. So the construction which the Tax Court places upon the 1944 and 1947 decrees produces the incongruous result of Charlotte including in her gross income payments received from petitioner in an amount sufficient to require the payment of an income tax of $2,500, while at the same time petitioner, according to the Commissioner, was only entitled to a deduction of $1,200, increased by the Tax Court to $2,900.

Petitioner's taxes for 1947 are not here involved, but the record disclosure for that year is important for two reasons, (1) it is a further demonstration that it was the intention both of the parties and the court that there should be no apportionment between alimony and child support for payments made by petitioner in accordance with the decrees under discussion, and (2) it is a graphic illustration of the manner in which the Commissioner blows hot and cold in these alimony cases. As to that year, the Tax Court in its opinion stated:

"In his income tax return for 1947, petitioner deducted $23,750

for alimony, but the respondent determined that only $1,950 of the amount was deductible. On brief the respondent concedes that the full amount deducted by petitioner was allowable. In a recomputation of the deficiency for 1947, effect will be given to the respondent's concession."

No explanation is offered, and we know of none, why petitioner was entitled to deduct all payments made to Charlotte during the year 1947 on the theory that they were "alimony" to her and denied the right to deduct four-fifths of such payments for other years on the apportionment theory, that is, that only one-fifth of such payments was alimony and the other four-fifths payments for support of the children.

Moreover, there appears in the record a letter by the Internal Revenue Service of the Treasury Department, dated October 25, 1950, directed to Charlotte, in which she is advised that there is a deficiency of $794.80 in her income tax for the year ending December 31, 1947. This letter discloses that Charlotte took the position that the payments she received from petitioner during that year should be apportioned, in accordance with the 1940 decree, as between alimony and child support, and that she was only required to include in her gross income an amount equal to one-fifth of such payments. More specifically, her position at that time as stated by the Commissioner was as follows:

"It is contended that this construction not only applies to the June 14, 1946, consent decree but also to a decree of December 1947 wherein taxpayer was awarded the sum of $23,000.00 for 1947, and that since the original decree of divorce allowed only one-fifth of the monthly payment as alimony, only one-fifth of any other payments awarded by the Court is alimony and the balance (⅘ths) is support money for the children and not taxable. In brief it is contended as follows: ⅕th of $23,000.00 1947 payments or $4,-600.00 is alimony. The balance or $18,400.00 is support money and not taxable."

This contention by Charlotte was denied by the Commissioner. After quoting from the 1947 decree (as we have heretofore done) the Commissioner stated:

"Clearly, the parties as well as the court considered the entire amount to be paid in 1947 as alimony and the decree supersedes any prior decrees in which support money was awarded.

"It is held therefore that the entire amount received from the taxpayer's divorced husband in 1947 represents alimony and is fully taxable to the taxpayer."

In contrast, the Commissioner, as to the same decree, now contends that it did not supersede previous decrees, that it was merely amendatory and that it was the intention of the court and the parties that the payments thereby required be apportioned one-fifth to alimony and four-fifths to support for the children.

Obviously, petitioner was entitled for the year 1947 to deduct payments which Charlotte was obligated to include in her gross income. It is, therefore, not strange that respondent before the Tax Court conceded that all payments made by petitioner for 1947 were deductible. The strange thing is that he refuses to make the same concession for other years, particularly for the year 1948, during which payments were made under the same 1947 decree. For that year, however, both the Commissioner and the Tax Court revert to the apportionment theory based upon the 1940 decree and allow petitioner a deduction of only $2,-887.64, or one-fifth of the amount paid by petitioner to Charlotte during that year.

It is intimated that petitioner in some questionable manner induced the court in its 1944 and 1947 decrees to abandon the apportionment as between alimony and child support which had been made

in the 1940 decree so that petitioner might be entitled to deduct such payments. On this score the record shows nothing more than that both the parties and the court were highly conscious of the tax consequences to flow as a result of the payments which petitioner was obligated to make. To think that the attorneys for the parties, as well as the court, did not appreciate such consequences would amount to a reflection upon their intelligence. It may be, in fact we strongly suspect, that the court in the 1944 and 1947 decrees intentionally provided for payments to Charlotte in a lump sum, that is, without apportionment between alimony for Charlotte and support for the children so that Charlotte would be obligated to include such payments in her gross income and, by the same token, that petitioner would be entitled to deduct such payments. Particularly is this so in view of the strong indication which the record supplies that Charlotte did as a matter of fact include such payments in her gross income and, further, from the showing that the court on more than one occasion required that petitioner pay either directly to Charlotte or to the Collector of Internal Revenue on her behalf the taxes imposed upon her by the inclusion of such payments in her gross income.

■ Furthermore, even though we assume that the decrees under discussion were so framed as to permit deductions by petitioner of payments made thereunder, no criticism can rightly be made. Petitioner, as any other taxpayer, had a right to avoid taxes by any legitimate means. Congress prescribed the conditions upon which a wife is obligated to include alimony payments in her gross income, which it at the same time gave the husband a right to deduct. Thus, even though petitioner sought and the court awarded a decree which would bring the payments and the parties within the statutory provision, no just complaint can now be made by the Commissioner. The taking advantage of such provisions was both good business and good sense.

We must not conclude without reference to the decision of this court in Mandel v. Commissioner, 7 Cir., 185 F.2d 50, upon which the Commissioner and the Tax Court so heavily rely in support of their theory that the 1944 and 1947 decrees should be construed in connection with the 1940 decree with the result that payments made by petitioner must be apportioned between alimony for Charlotte and support for the children. In our view, that opinion does not afford the slightest support for the theory. There, we construed a separation agreement which contained provisions apparently in conflict. In one provision the husband was required to pay $18,000 for the support of his wife and children; another provision, however, designated the amount which the wife was required to use for the support of the children. Thus, it was merely a matter of calculation to determine the portion of the total which was payable to the wife as alimony. The real gist of our holding was that the general provision for payment in a total amount must give way to a later specific provision which apportioned such amount as between alimony and child support. The reasoning there with reference to a single instrument is a far cry from the situation here, where it is sought to construe separate decrees entered over a period of seven years, from 1940 to 1947.

■ As heretofore stated, we go along with the Tax Court in its reasoning concerning the 1942 decree solely because that decree specifically refers to the 1940 decree and accords petitioner the right to terminate payments under the 1942 decree and to revert to those provided in the 1940 decree. However, for reasons shown, we are firmly of the view and so hold that the 1944 and 1947 decrees were not only separate and distinct from that of 1940, but that they each clearly set forth the rights and obligations of the parties. Neither of such decrees "fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children" and, therefore, are not

within the terms of the "child support provision" contained in 22(k).

We hold that petitioner is entitled to deduct all payments made to Charlotte for the years 1944 (other than those made in January and February of that year), 1945, 1946 and 1948. As to those years, the decision of the Tax Court is reversed and the cause remanded for the purpose of determining petitioner's deficiencies, if any. The decision of the Tax Court as to the years 1942, 1943, and the first two months of 1944 is affirmed.