ALBERT J. FABER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61017. Filed March 10, 1958.

*Samuel J. Foosaner*, *Esq.*, and *Jack N. Honart*, *Esq.*, for the petitioner.

*Arthur Pelikow*, *Esq.*, for the respondent.

#### OPINION.

FORRESTER, *Judge:* The Commissioner has determined a deficiency in petitioner's income tax in the amount of $1,407.01 for the calendar year 1952. The issue for decision is whether an annual payment of $2,700 to petitioner's divorced wife for the support and care of her son is deductible under section 23 (u) of the Internal Revenue Code of 1939. The facts have been wholly stipulated and are included herein by reference.

The petitioner filed his individual return for the calendar year 1952 with the director of internal revenue, Newark, New Jersey.

The petitioner and Ada W. Faber were married in Ridgewood, New Jersey, on November 13, 1946. At the time of this marriage Ada was the mother of a 3-year-old son named William Black who had been born to her of a previous marriage. William was never legally adopted by the petitioner. His name, however, was legally changed from William Black to William Faber on November 3, 1947.

Petitioner and Ada, on April 30, 1952 (mistakenly stipulated as April 13, 1952), entered into an "agreement" which was ratified, approved, confirmed in, and made a part of, *in haec verba*, a final decree of divorce entered June 6, 1952, by the Circuit Court of the Sixth Judicial Circuit of the State of Florida in and for Pinellas County. Section 3 of the agreement provides:

The Husband covenants and agrees to pay to the Wife in settlement of her property rights and the obligation of the Husband for her future care, support and maintenance, and for the care of the Wife's child, William, the sum of Fifty-five thousand dollars ($55,000.), payable Five thousand dollars ($5,000.) annually, beginning the first day of January, 1952, to and including the first day of July, 1962, or for a period of eleven years. Receipt is hereby acknowledged by the Wife of payment by the Husband of Two thousand five hundred dollars

($2,500.) due and payable on January 1, 1952. Payments as above set forth shall be at such place or places as the wife may, from time to time, designate in writing.

Said payment or payments are to be allocated Two thousand three hundred dollars ($2,300.) annually for the Wife, and Two thousand seven hundred dollars ($2,700) annually for the support and care of his Wife's son, William.

In the event that the Wife or her son die before all payments have been made, then the allocated part of the payment, as above set forth, shall cease, and the future payments reduced, and the estate of the one so dying shall have no claim against the Husband for future payments.

During the calendar year 1952, petitioner made payments to Ada totaling $5,000. In his income tax return for 1952 petitioner deducted this amount as an alimony payment. Respondent has disallowed $2,700 of this amount. His notice of deficiency states:

It has been determined that you are not entitled to the deduction of $2,700.00 claimed in the year 1952, representing payment for care, support and maintenance of William Robert Faber, under Section 23 (u) of the Internal Revenue Code of 1939.

1. This case presents the novel factual question [1] of whether a husband's periodic payments to his former wife pursuant to a final decree of divorce, which payments are specifically allocable to the care and support of the wife's minor son (husband's stepson), are includible in the gross income of the wife and consequently deductible by the husband. The pertinent language of sections 23 (u) and 22 (k) of the Internal Revenue Code of 1939 appears below.[2]

Sections 22 (k) and 23 (u) were intended to relate only to alimony and similar payments. Section 22 (k) provides that in the case of a wife who is divorced from her husband under a decree of divorce, periodic payments received subsequent to such decree "in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree * * *

---

[1] An identical issue was presented in *George R. Joslyn*, 23 T. C. 126, affirmed in part and reversed in part 230 F. 2d 871. We were, however, able to decide that case on a different issue.

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

    \*        \*        \*        \*        \*        \*        \*

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *

shall be includible in the gross income of such wife." The petitioner was not under any legal obligation because of the marital or family relationship to pay anything to William and thus the amounts paid to William were purely voluntary on the part of the petitioner so far as this record shows, and therefore not within the intendment of section 22 (k).

Petitioner's main argument is that a husband is permitted to deduct alimony payments except insofar as those payments may be disqualified because of the language of the second sentence of section 22 (k). This sentence reads:

This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *

Petitioner's contention is that inasmuch as William is not a minor child but is instead the minor child of his former wife, Ada, the exception stated in the second sentence of section 22 (k) is therefore inapplicable and petitioner is entitled to a deduction of all amounts paid pursuant to the final decree of divorce.

We think petitioner is correct in his contention to the effect that the second sentence of section 22 (k) is inapplicable to the problem before us. We, however, cannot agree that this sentence gives any affirmative support to the asserted deduction or that it in fact states the only exception to a general rule of inclusion in the gross income of a wife of all payments made by a husband pursuant to a final decree of divorce. To the contrary, we think that the second sentence of section 22 (k) does not state an exception to the first sentence of the same section but instead merely clarifies one ambiguity which might otherwise exist due to the loose usage of the terms "alimony" and "separate maintenance."

Our reasons for this conclusion are: (1) The second sentence of section 22 (k) is by its own language exclusionary, i. e., it does not purport to determine those types of payments which are includible in the gross income of the wife; it only purports to indicate one specific type of payment which is not includible in the gross income of the wife; and (2) the first sentence of section 22 (k) seeks to include within the gross income of the wife only those payments which are for her support and maintenance, i. e., it seeks to include in a wife's gross income only true alimony or separate maintenance payments and not those payments which are specifically designated as child support payments.

It, of course, can be argued that Congress, by specifying one type of payment for exclusionary treatment, intended thereby, by inference, to include all other types of payments which would otherwise qualify

except for the designation of the ultimate payee. We believe, however, that Congress was aware of the customary practice of providing that child support payments be made directly to the minor child's mother as natural guardian of the child's person and custodian of his property. Being aware of this practice it seems more logical that Congress sought to clear up any misunderstanding which might later arise from the fact that in common parlance such payments are often mislabeled alimony or separate maintenance.

Our conclusion in this respect is amply supported by the committee reports on the Revenue Act of 1942. For example, the report of the Committee on Ways and Means, H. Rept. No. 2333, 77th Cong., 1st Sess., 1942–2 C. B. 372, 428, explains the congressional intent as follows:

This section applies only where the legal obligation being discharged arises out of the family or marital realtionship in recognition of the general obligation to *support*, which is made specific by the instrument or decree. * * * [Emphasis supplied.]

From the context of the above-quoted sentence and from a reading of the individual statements from the hearings before the Committee on Ways and Means, House of Representatives, 77th Cong., 2d Sess., on Revenue Revision of 1942, vol. 2, pp. 2157–2167, it is clear that Congress was referring to a husband's obligation to support his wife only.

Our interpretation of section 22 (k) is also supported by the holding in *Leon Mandel*, 23 T. C. 81, affd. (C. A. 7, 1956) 229 F. 2d 382. In that case the husband made payments to his former wife pursuant to a final decree of divorce. A portion of these payments was specifically allocable to his minor children. The husband's payments continued after the children reached adulthood. In the year of the children's majority the husband for the first time deducted the full amount of his payments. His justification for the enlarged deduction was that the payments were no longer subject to the exclusionary treatment afforded payments for the support of minor children. A similar argument had been successful in *Feinberg* v. *Commissioner*, (C. A. 3, 1952) 198 F. 2d 260, reversing 16 T. C. 1485. In denying the husband a deduction for these payments, we distinguished the *Feinberg* opinion on the basis that the taxpayer's wife did not have an undisputed right to receive the payments for the benefit of the children, but that the husband could, at any time, have made the payments directly to the children. *Leon Mandel, supra* at 89. On appeal, *Mandel* v. *Commissioner, supra*, the Court of Appeals for the Seventh Circuit affirmed on the nearly parallel ground that the payments were received by the wife, not for her own benefit but on behalf of the children. In so doing, the court expressed its disagreement with the decision of the Third Circuit in the *Feinberg* case.

The only significant factual difference which distinguishes *Leon Mandel, supra,* from the instant case is the designation of the ultimate payee. The substantive distinction is that whereas in the instant case petitioner's former wife, Ada, owed a legal obligation to support her minor son, William, in the *Mandel* case the husband's former wife owed no obligation of support to her adult children. This distinction was pointed out by the Court of Appeals in the *Mandel* case as follows:

No legal obligation to support the children after they arrived at their majority was imposed upon * * * [the wife]. The payments in controversy made to her thereafter were for and on their behalf and represented no economic or financial gain or benefit to her. We conclude that they were not includible in her gross income under 22 (k). * * *

Petitioner's argument here is that Ada owed a legal obligation to her minor son, William, to provide for his support and that she derived an economic or financial benefit as the result of petitioner's satisfaction of this obligation. From this premise petitioner concludes that the total payments to Ada are taxable to her and consequently deductible by him.

The difficulty with petitioner's contention is that it does not proceed far enough. Even if we assume for purposes of argument that petitioner's contention is correct, it still does not follow that Ada has been benefited in the amount of $2,700, or at all. This is because a wife's legal obligation to her minor child is at most an obligation to provide necessaries, and the record before us is silent as to other possible sources of income to William.

2. This is not to say that we might not have held the payments deductible by the petitioner if he had been able to prove that his agreement with Ada was a mere assignment of a portion of her right to alimony. For instance, in *Robert Lehman,* 17 T. C. 652, we held that a divorced husband was entitled to deduct payments to his former mother-in-law pursuant to a final decree of divorce. We, however, based our decision upon the express terms of the property settlement agreement which provided that the payments to the mother-in-law were "for and in behalf of" the wife and "for her benefit" and the recital to the agreement indicated that the wife was the sole support of her mother and that she "desires hereby to make provision for her support."

The instant case presents an entirely different agreement. Petitioner is required to pay $5,000 annually to Ada for "her future care, support and maintenance, and for the care of * * * [Ada's] child, William." The payments are to be allocated $2,300 annually for Ada and $2,700 annually "for the support and care of * * * [Ada's] son, William." Nothing in the agreement or the record indicates that the payments for the support of William are *for and in behalf of Ada* or

*for her benefit* or that she is the sole support of William. See *Leon Mandel, supra* at 88. In fact, further controverting petitioner's theory of benefit to Ada, we note that the third paragraph of that section of the agreement designated "3" provides that if either Ada or William should die, then that allocated part of the payment should cease (and the other allocated part continue.) A similar provision was interpreted in *Mandel* v. *Commissioner, supra,* as irrefutable recognition of the fact that no part of the payments allocated to the support of a child was to belong to the wife or to be used for her benefit.

Certainly it is true, as petitioner points out, that but for the decree of divorce petitioner could not have been required to support his stepson. But this does not, by itself, make the payments allocable to William "alimony." The only inference which we can draw from the agreement and from the final decree of divorce incorporating the agreement *in haec verba,* is that for some reason, unbeknown to us, the parties chose to allocate the annual payments between Ada and William. If Ada desired unrestricted use of the total payments, then it seems unusual that she should have granted William a legal right to a portion of these payments. Or if the allocation idea originated with petitioner, we can only assume that he had some good reason for insisting that a portion of his total payments be apportioned for the benefit of his stepson. At this point it should be noted that William changed his surname to that of petitioner's. It therefore may well be that the agreement evidences a showing of parental concern even though the relationship is that of stepfather-stepson.

Petitioner's final argument is that section 39.22 (k)–1 (d) of Treasury Regulations 118 supports the deduction. This regulation provides in part:

Except in cases of a designated amount or portion for the support of the husband's minor children, periodic payments described in section 22 (k) received by the wife for herself and any other person or persons are includible in whole in the wife's income, whether or not the amount or portion for such other person or persons is designated.

In *Mandel* v. *Commissioner, supra,* the taxpayer also relied upon this regulation. The Court of Appeals stated, 229 F. 2d at p. 388:

That such reliance is ill-founded is evident from our previous discussion. The *involved* payments were not "received by the wife for herself and any other person or persons." They were received by her solely for and on behalf of the adult children. As we have shown, she had no interest in such payments; they were not made for her benefit or use. [Emphasis supplied.]

We think it clear from our earlier discussion that the payments which were specifically allocated to William's care and support were not "periodic payments described in section 22 (k)." We can ascribe no other meaning to the regulation than that a wife may be held to have

constructively received income when she assigns a part of her right to alimony to another. See *Robert Lehman, supra,* and *Estate of Boies C. Hart,* 11 T. C. 16, 21, in which latter case the Court, in allowing the deduction of life insurance premiums, paid by the husband, said:

It is true that the premiums were not actually paid to Ruth, but prior to the New York decree they had been paid to a trustee by virtue of an *assignment* of part of Boies Hart's income. Furthermore, these payments were officially designated in said decree to be a part of the 38½ per cent of Hart's income which was allocated to the use of Mrs. Hart. [Emphasis supplied.]

Inasmuch as the evidence in this case points just as strongly toward petitioner's wishing to give his stepson a right to the income as Ada's having bargained for that result, petitioner again has not sustained his burden of proof.

Respondent has based his argument largely on the theory that petitioner was *in loco parentis* to William and that therefore the payments for his support were for the support of a minor child of the husband. Because of our decision on the primary issue, it will not be necessary for us to decide this question.

*Decision will be entered for the respondent.*