Albert J. FABER, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 12648.

United States Court of Appeals
Third Circuit.

Argued Nov. 20, 1958.

Decided March 3, 1959.

S. J. Foosaner, Newark, N. J., for pe-
titioner.

Charles B. E. Freeman, Washington,
D. C. (Andrew F. Oehmann, Acting
Asst. Atty. Gen., Lee A. Jackson, Loring
W. Post, Attys. Dept. of Justice, Wash-
ington, D. C., on the brief), for respond-
ent.

Before BIGGS, Chief Judge, and
MARIS and McLAUGHLIN, Circuit
Judges.

BIGGS, Chief Judge.

This case comes before us on a petition
to review a decision of the Tax Court,
1958, 29 T.C. 1095. The issue presented
is: Is the taxpayer, Faber, entitled to
deduct under Section 23(u), Internal
Revenue Code of 1939, 56 Stat. 817, 26
U.S.C. § 23(u), a portion of an annual
$5,000 payment, made to his divorced
wife, Ada, namely $2,700, designated in
the separation agreement incorporated
in the divorce decree for the support of
his divorced wife's son?

The taxpayer and his wife, Ada, were divorced in 1952. The former Ada Faber had been previously married and had a son by this former marriage, William Black, who adopted his stepfather's surname but was never legally adopted by his stepfather. The taxpayer and his wife entered into a separation agreement which was made part of the final decree of divorce. The agreement provided in pertinent part:

"The Husband covenants and agrees to pay to the Wife in settlement of her property rights and the obligation of the Husband for her future care, support and maintenance, and for the care of the Wife's child, William, the sum of Fifty-five thousand dollars ($55,000), payable Five thousand dollars ($5,000) annually, beginning the first day of January, 1952, to and including the first day of July, 1962, or for a period of eleven years. * * * Receipt is hereby acknowledged by the Wife of payment by the Husband of Two thousand five hundred dollars ($2,500) due and payable on January 1, 1952. Payments as above set forth shall be at such place or places as the Wife may, from time to time, designate in writing.

"Said payment or payments are to be allocated Two thousand three hundred dollars ($2,300) annually for the Wife, and Two thousand seven hundred dollars ($2,700) annually for the support and care of his Wife's son, William.

"In the event that the Wife or her son die before all payments have been made, then the allocated part of the payment, as above set forth, shall cease, and the future payments reduced, and the estate of the one so dying shall have no claim against the Husband for future 'payments'." [1]

The taxpayer paid Ada $5,000 in 1952. He deducted the $5,000 as an alimony payment in his individual tax return for that calendar year. The Commissioner allowed $2,300 but disallowed the remaining $2,700 as a deduction on the ground that this amount represented "payment for care, support and maintenance of William Faber, under Section 23(u) of the Internal Revenue Act of 1939."

The pertinent statutory provisions of the Internal Revenue Code of 1939 are set out in the footnote.[2]

■ Whether the taxpayer may deduct, under Section 23(u), the amount of any payment to his wife depends on whether the payment is properly includible in the wife's income under Section 22(k). Eisinger v. C. I. R., 9 Cir., 1957, 250 F.2d 303, certiorari denied, 1958, 356 U.S. 913, 78 S.Ct. 670, 2 L.Ed. 2d 586.

[1]. No question is raised as to the periodicity of the payments.

[2]. "§ 22. *Gross income* * * * (k) Alimony, etc., Income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband * * * *"

"§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions: * * * (u) Alimony, etc., payments. In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection."

The taxpayer contends that the second sentence of Section 22(k) is exclusionary in effect and meaning and that William Faber is not within the classification of "minor child." We agree. William was a stepchild of the taxpayer and was not the taxpayer's child.[3] But it does not follow, as the taxpayer contends, relying on our decision in Feinberg v. C. I. R., 3 Cir., 1952, 198 F.2d 260, that since the exception contained in the second sentence of Section 22(k) does not apply, the full amount of $5,000 automatically must be included in the wife's income and hence must be deducted from the husband's. The Feinberg decision does not support the taxpayer's view for if the whole payment is to be considered as income to the wife the requirements of the first sentence of Section 22(k) must be satisfied independently. The Feinberg decision does not hold that those requirements do not have to be met. The second sentence of Section 22(k) deals only with one specific type of payment which is not includible in the wife's income.

It remains to be determined whether under the first sentence of 22(k) the entire $5,000 should constitute income to Ada Faber. The Tax Court has concluded that "the amounts paid to William were purely voluntary on the part of the petitioner so far as this record shows, and therefore not within the intendment of Subsection 22(k)." With this conclusion we cannot agree.

Suppose that in this case it was clear that Ada had the legal obligation to support William[4] and the agreement had recited that the amount for William's care was for and in Ada's behalf. It would then be apparent that $2,700 would have been includible in Ada's income and deductible from the taxpayer's. Robert Lehman, 1951, 17 T.C. 652.[5] Here, a recital to such effect is missing but the mere absence of the appropriate language from the agreement does not resolve the issue and it becomes pertinent to inquire whether the payment of the $2,700 was made for and in behalf of Ada. Relevant to this inquiry is the answer to the question whether Ada acquired an economic benefit of such nature that the payment may be said to be for and in her behalf. In Mandel v. C. I. R., 7 Cir., 1956, 229 F.2d 382, the taxpayer-husband agreed to pay his wife $18,000 a year, the separation agreement further providing that should she remarry, the payment would be reduced to $833.33 per month, $10,000 a year, and that if a child, there being two children of the marriage, should marry, or on reaching 21 live apart from the wife, the husband could elect to pay directly to the child $416.66 per month, $5,000 per year.

Before the tax years in question, Mandel's wife remarried, and the two children of Mandel had married and were living apart from their mother, the wife. Mandel paid to his former wife amounts as specified in the separation agreement which she in turn paid to the two children. The court did not allow the taxpayer to deduct the amounts so paid, since the amounts were not income to the wife. The court stressed the point that,

---

3. The Commissioner urges upon the court the argument that the taxpayer stood *in loco parentis* to William after as well as before the divorce and separation, and that, therefore, the payments in question for William's support were fixed "for the support of minor children of such husband. * * *" This argument is without merit. One has no continuing obligation to support a stepchild to whom he stands *in loco parentis*. 67 C.J.S. Parent and Child 1950, § 80; Schneider v. Schneider, Ch., 1947, 25 N.J.Misc. 180, 52 A.2d 564.

4. We may assume for the moment that Ada had such a legal obligation. Hippodrome Building Co. v. Irving Trust Co., 2 Cir., 1937, 91 F.2d 753.

5. See also Treasury Regulations 118, § 39.22(k)–1(d): "Except in cases of a designated amount or portion for the support of the husband's minor children, periodic payments described in section 22(k) received by the wife for herself and any other person or persons are includible in whole in the wife's income, whether or not the amount or portion for such other person or persons is designated."

by the terms of the agreement and under the circumstances, the wife had received no economic or personal benefit from the payments made to her after her remarriage and the emancipation of the two children. "No legal obligation to support the children after they arrived at their majority was imposed upon Edna." 229 F.2d at page 387. In the case at bar the existence of a legal obligation of the wife to support her son has been assumed by us to be present.[6] Under this assumption aid in the satisfaction of Ada's obligation by the payments of the separation agreement was for her benefit and hence was "for and in behalf of" Ada. Lehman, supra, 17 T.C. at page 653. That the payment also benefits another person, William, does not remove it from the ambiency of Section 22(k). This payment was made in discharge of a legal obligation, which because of the "marital or family relationship," was incurred by the taxpayer. Lehman, supra. Cf. Treasury Regulations 118, § 39.22 (k)-1(a) (5). Accordingly, under this assumption, the entire $5,000 would be includible in Ada's income.

Furthermore, Treasury Regulations 118, § 39.22(k)-1(d), note 5, supra, provides that, excepting payments to minor children of the husband, "periodic payments received by the wife for herself and any other person or persons are includible in whole in the wife's income." The stipulated facts show that the total payment of $5,000 for the tax year 1952 was, in accordance with the agreement, made to and received by Ada. The Tax Court relies on Mandel v. C. I. R., supra, pointing out that the payment to Ada was not within the quoted portion of the

Regulation, viz., that payment was not received by Ada "for herself and any other person." But the court in Mandel stated that the payments were received by the wife "solely for and on behalf of the adult children." In 1952 William was only nine years old.

Merely because Ada's obligation, if it exists, may be limited to the providing of necessaries for William, it does not follow that only the amount required for necessaries is to be includible in her income. The provisions of Section 22(k) do not limit includible alimony payments to the wife to necessaries and we cannot say that payments to another person on her behalf should be so limited. While Ada may not be legally responsible for more than necessaries, it may still be to her economic advantage to have funds supplied which exceed the legally required amount. We cannot say that the payment is so large that it becomes unrelated to the economic advantage which is Ada's by virtue of the payment of $2,700 made for William.

The opinion of the Tax Court states that Ada had a legal obligation to support William [7] but this statement is not supported by the record. It appears that Ada Faber is presently living in Florida. The record does not show where Ada's first husband, William's father lived or where she and William's father were domiciled during their marriage. The issue of whether Ada is legally liable for William's support cannot be resolved on the present record. Technical rules of evidence, if they were applied in this case, might require affirmance of the decision of the Tax Court for the burden was upon the taxpayer to supply all

6. See note 4, supra.

7. The Tax Court states: "The only significant factual difference which distinguishes Leon Mandel, supra, [23 T.C. 81, affirmed 7 Cir., 1956, 229 F.2d 382] from the instant case is the designation of the ultimate payee. The substantive distinction is that whereas in the instant case petitioner's former wife, Ada, owed a legal obligation to support her minor son, William, in the Mandel case the husband's former wife owed no obligation to

support her adult children. This distinction was pointed out by the Court of Appeals in the Mandel case as follows: 'No legal obligation to support the children after they arrived at their majority was imposed upon * * * [the wife]. The payments in controversy made to her thereafter were for and on their behalf and represented no economic or financial gain or benefit to her. We conclude that they were not includible in her gross income under 22(k). * * '"

pertinent facts from which cognate legal conclusions could be drawn. But we are not inclined under the circumstances of the case at bar to retreat to a technicality to dispose of the pending petition for review.

Accordingly, the decision of the Tax Court will be vacated and the case remanded in order to determine whether Ada had, in the tax year in question, an obligation to support her son William. If it be found to be a fact that Ada had such an obligation, the Tax Court should enter its decision in favor of the taxpayer. If it be found that Ada had no such obligation the Tax Court should again enter its decision in favor of the Commissioner. Section 2106, Title 28 U.S.C. See also Section 7482, Title 26 U.S.C.