MELVIN A. CHRISTIANSEN AND FAYE CHRISTIANSEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5667–71.   Filed June 19, 1973.

*John L. Carey* and *James P. Harrington*, for the petitioners.
*Robert G. Martinell*, for the respondent.

STERRETT, *Judge:* The Commissioner determined a deficiency in the petitioners' Federal income tax for the calendar year 1969 in the amount of $2,207.01.

The sole issue for our determination is whether the petitioners may deduct under the provisions of section 215, I.R.C. 1954,[1] payments in the amount of $3,686.03 made to his former wife's niece and nephew for their education expenses.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

The petitioners, Melvin A. Christiansen and Faye Christiansen, are husband and wife residing at the time of the filing of their petition herein at LaPorte County, Ind. They filed a timely joint Federal income tax return for the calendar year 1969, though the record does not indicate with which district director of internal revenue the return was filed. Faye is a party to this proceeding solely by virtue of having filed a joint income tax return and we will refer to Melvin A. Christiansen as petitioner.

---

[1] All statutory references herein are to the Internal Revenue Code of .1954 unless otherwise indicated.

Petitioner and Marie S. Christiansen (hereinafter Marie) were married on May 31, 1930.

Marie's brother had three children, namely Brian F. Shea, Patrick B. Shea (hereinafter Patrick) born August 12, 1946, and Joellen Shea (hereinafter Joellen) born January 28, 1949. The children were related to the petitioner only through his marriage to Marie. Prior to 1954 the children were not being adequately cared for by their natural parents. Since there were no relatives or other persons willing and able to care for these children, Marie spent many weeks at their home, cleaning, cooking, and caring for the children.

On September 14, 1956, the petitioner and Marie petitioned the LaPorte Superior Court, Juvenile Division, LaPorte County, Ind., for wardship and custody of the three children. On the same day the Superior Court issued, in pertinent part, the following decree:

Now THEREFORE, IT IS THE ORDER, JUDGMENT AND DECREE OF THE COURT, that temporarily, pending and until the further order of this court, Brian F. Shea, Patrick D. Shea and Joellen Shea, minor children, be and said children are hereby made wards of the LaPorte County Department of Public Welfare of LaPorte County, Indiana.

IT IS THE FURTHER ORDER, JUDGMENT AND DECREE OF THE COURT, that during the pendency of this order and until the same is modified by the court, the legal custody of said children be and the same is hereby awarded to Melvin A. Christiansen and his wife, Marie Christiansen, and that during the pendency of this wardship said Melvin A. Christiansen and Marie Christiansen are hereby charged and shall have absolute supervision of the custody, care, instruction, maintenance and welfare of said children, and shall be responsible to this court and said LaPorte County Department of Public Welfare for the carrying out of the duties and responsibilities herein charged and placed upon them.

IT IS FURTHER ORDERED, that during the pendency of this order said Melvin A. Christiansen and Marie Christiansen shall support said children from their own funds and resources.

IT IS FURTHER ORDERED AND DECREED, that no person, persons or agencies shall modify, change or alter the custody of said children as herein awarded without first making application to this court and the orders herein made shall so stand as temporary orders in full force and effect until modified as herein provided.

ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED BY THE COURT IN OPEN COURT THIS 14th day of September, 1956.

From 1956 until 1960, Patrick and Joellen lived with the petitioner and Marie. In 1960 the petitioner and Marie separated and lived apart. Patrick and Joellen continued to live with Marie until 1962, after which time Joellen lived with the petitioner.

On December 18, 1964, the petitioner and Marie entered a Separation and Property Agreement, which included the following excerpts:

ARTICLE IV

Section 1. *Covenants and Conduct of the Husband.* * * * The Husband agrees that the Wife shall continue in her custody and wardship of Brian Shea. The

wardship and physical custody of the ward, Patrick Shea, shall be determined by the boy himself.

Section 2. *Covenants and Conduct of the Wife.* The Wife agrees that the wardship and physical custody of Joellen Shea shall remain with the Husband. * * *

ARTICLE V

Section 2. *Alimony*

(a) The Husband agrees to pay the Wife alimony in the amount of $134,378.00 in complete discharge of all Husband's obligations to the Wife, except as hereinafter provided, arising out of the marital or family relationship heretofore existing between the Husband and Wife. The Husband agrees to pay the Wife such alimony in 180 monthly installments of $746.35 each (amounting to $8,956.00 annually), beginning with the first day of the month succeeding the month in which the Decree of Divorce occurs.

(b) In addition to these sums, the Husband agrees to credit to the Wife the sum of $13,000.00, or so much thereof as may be necessary for the payment of high school and/or college expenses of Joellen and Patrick Shea, it being understood that this amount of money will represent income to the Wife, and will represent about one-half of the amount of all the expenses of Patrick and Joellen Shea may amount to if either one or both are able and willing to do work through the Bachelor of Arts degree. The amount of money to be credited in any one year in the next six years shall be substantially one-half of the amount required to pay the additional expenses of the aforesaid children. The Wife agrees that the Husband shall have the control and direction of the actual expenditure of the funds for the aforesaid educational purposes, but that said responsibility shall devolve upon the Wife in case of the death of the Husband.

(c) Remarriage or Death of Wife. In the event of the remarriage of the Wife, the Husband's obligation to pay the remaining number of monthly installments shall remain the same as though there had been no remarriage. In the event of the death of the Wife, the Husband's obligation to pay the remaining number of monthly installments shall cease.

The Separation and Property Agreement was duly incorporated in a divorce decree of the LaPorte Superior Court of December 18, 1964.

Patrick, no longer attending college, enlisted in the U.S. Army in May 1966 for a period of 3 years. At this point Marie requested the petitioner to pay any amount to her which would have been paid to Patrick from the $13,000 specified in their agreement.

Joellen enrolled at Washington University during the fall semester, 1967. She was continuously a student there until her graduation in 1971. Patrick enrolled as a student at Chicago Circle Campus, Chicago, Ill., in September 1969.

During the taxable year 1969 the petitioner paid $7,372.06 for the college expenses of Patrick and Joellen. One-half of the payments, or $3,686.03, was deducted along with $8,956.20 of regular alimony payments (not in dispute herein) on the petitioners' joint Federal income tax return for the calendar year 1969.

Marie included in her gross income $8,956.20 of regular alimony,

plus $2,250 [2] of payments contributed to the education of Patrick and Joellen. Furthermore Marie took credit for contributions made by the petitioner to the children. For example, Marie sent the following letter to Joellen:

2707 Wabash St.
Michigan City, Ind.
November 29, 1966

DEAR JOELLEN:

In fairness to both of us, I think you should know that I have contributed $1,000 towards your high school expenses of the past two years and $6,000.00 towards your college education. It was agreed that Uncle Melvin would control and be responsible for this money; should something happen to him this control and responsibility would then fall on my shoulders.

Please understand this was not compulsory but something I wanted to do, not only for you but Pat and Brian as well.

Giving entails sacrifice and this I expected when I made the above decision but what I didn't expect is the necessity for writing this letter of explanation.

OPINION

Petitioner and Marie were granted legal custody of Brian, Patrick, and Joellen, the three minor children of Marie's brother. On December 18, 1964, the petitioner and Marie were divorced. Pursuant to their Separation and Property Agreement, in addition to regular installment payments of alimony, the petitioner agreed to credit Marie with up to $13,000, representing one-half the expected cost of an education for Patrick and Joellen through a bachelor of arts degree. Petitioner retained actual control over the disbursement of the education funds. During the year in issue the petitioner expended $7,372.06 on the educations of Patrick and Joellen. Of this amount, petitioner deducted $3,686.03, as representing alimony in the form of credits to Marie for her one-half share of the expenses. Marie included $2,250 which she considered to be her share of such expenses.

The only issue to be decided is whether the $3,686.03 paid for the educations of Patrick and Joellen and credited by the petitioner to Marie is deductible under the provisions of section 215, which states, in part:

SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

It is evident from this language that petitioner's right to deduct the $3,686.03 is dependent on the includability of these payments in Marie's gross income under section 71. Section 71(a) includes in the

---

[2] There is no breakdown in the record of the precise makeup of the $2,250 included by Marie nor any indication why she chose to include that particular amount.

gross income of a divorced wife (1) periodic payments,[3] (2) received by her, (3) in discharge of the husband's legal obligation, (4) incurred under a divorce decree or settlement agreement incident to such decree.[4] The only source of contention between petitioner and respondent is whether the education payments were received by Marie.

The legislative history of section 71 shows that it was enacted in 1942 "to treat such payments as income to the spouse actually receiving, or actually entitled to receive, them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payments is under the present law includable in his gross income," S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 568. Actual receipt is not a requirement of the statute. *Robert Lehman*, 17 T.C. 652 (1951). However it is quite clear from the case law that in order to qualify as alimony, the wife must receive an economic benefit from such payment. *Faber* v. *Commissioner*, 264 F. 2d 127 (C.A. 3, 1959), remanding 29 T.C. 1095 (1958) ; *Mandel* v. *Commissioner*, 229 F. 2d 382 (C.A. 7, 1956), affirming 23 T.C. 81 (1954) ; *Eugene F. Emmons*, 36 T.C. 728 (1961), affd. 311 F. 2d 223 (C.A. 6, 1962) ; *Robert Lehman, supra.*

In the instant case, Marie felt an obligation to provide half the education expenses of her niece and nephew, Joellen and Patrick. The children, as far the record indicates, could only look to Marie and the petitioner for assistance in their educational pursuits, their own parents having been unable to care for them. We believe that the Separation and Property Agreement was negotiated with this obligation in mind. Whether this obligation was legal, or merely a strong moral obligation, should make no difference herein. The payments made by the petitioner to the children discharged Marie's personal obligation to see that the children were educated. This we see as an economic benefit to her. In her conversations with the children, Marie stressed that although payments were coming from the petitioner, she was responsible for half. Indeed she agreed in an arm's-length transaction to pay the income tax due on her share.

Moreover, we are convinced that had the petitioner and Marie not agreed to provide for the children's education as they did, she would have received additional alimony directly. Allowing the petitioner to control the disbursement of the education expenses appears merely to have been the convenient method for handling this joint obligation.

---

[3] Respondent has not contested the periodic nature of these payments.

[4] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

We feel that our opinion in *Robert Lehman, supra*, controls the outcome of this decision. This Court held therein that, since the wife *felt* obligated to support her mother, payments made by the former husband directly to her mother pursuant to a separation agreement resulted in the discharge of the wife's obligation, and therefore constituted additional alimony. In the instant case, it is clear to us that the petitioner's payments discharged Marie's obligation to provide half the education expenses of the children.

*Mandel* v. *Commissioner, supra*, which the respondent relies on, is distinguishable from the case at hand. In *Mandel* the taxpayer-husband made payments to his former wife for the benefit of their adult children pursuant to a separation agreement. The exact question before the Court was whether *actual* receipt of funds by the wife from the husband was sufficient to bring them within the scope of the predecessor of section 215. The Court of Appeals for the Seventh Circuit held that since the wife "was under no obligation by agreement or otherwise, to support her children after majority," she did not receive an economic benefit from payments received by her but destined for the children. *Mandel* v. *Commissioner, supra* at 388. In essence, she was merely a conduit for payments by the husband to the children. The difference therefore lies in the fact that in *Mandel* the husband's payments were made voluntarily on his own behalf, while in the instant case the petitioner made payments on behalf of Marie. We therefore hold that the payments constitute alimony to Marie and are deductible by the petitioner.

*Decision will be entered for the petitioners.*