ROBERT LEHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 28246. Promulgated October 10, 1951.

*Isidor Sack, Esq.*, and *Arthur D. Smith, Jr., Esq.*, for the petitioner.
*Joseph F. Rogers, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of
$6,018.20 for 1944. The issues for decision are whether an annual
payment of $5,000 to the mother of the petitioner's divorced wife is
deductible under section 23 (u) and whether a partnership in which
the petitioner had an interest realized ordinary income on January 1,
1944, when some restrictions terminated on stock theretofore received
by the partnership. The parties filed a stipulation of facts which is
adopted as the findings of fact.

The petitioner filed his individual return for 1944 with the collector
of internal revenue for the second district of New York.

The petitioner and Ruth Lamar were married in 1929. They had
no children. They entered into a separation and property settlement
agreement on March 10, 1934, providing that they would live sep-
arately, the petitioner would pay Ruth $20,000 annually as long as she
lives and remains unmarried and would pay Ruth's mother $5,000
annually for life "for and in behalf of" Ruth, and the payments to
Ruth and "for her benefit pursuant to the provisions hereof, shall
be for her full and complete maintenance, support, * * * and
for the full satisfaction of the duty of support by the Husband."
The agreement contains a recital that Ruth is the sole support of her
mother and "desires hereby to make provision for her support."

Ruth obtained a divorce from the petitioner in Nevada on May 1,
1934, and the agreement of March 10, 1934, was approved in the decree.

The petitioner paid Ruth $20,000 and her mother $5,000 in 1944,
pursuant to the agreement. The Commissioner, in determining the
deficiency, allowed a deduction under section 23 (u) of $20,000 but
disallowed the additional deduction of $5,000 claimed.

The petitioner did not testify but introduced a deposition of one
of the attorneys who represented him in the 1934 transactions in

which the attorney stated that the provisions relating to the payment of $5,000 annually for life to Ruth's mother were inserted at the insistence of an attorney, now deceased, who represented Ruth in those transactions. Ruth, her mother, and an attorney who assisted in representing Ruth in the 1934 transactions gave testimony indicating that the provision for the payments to Ruth's mother originated with the petitioner and was inserted in the agreement because he knew the situation, was fond of his mother-in-law, and wanted to provide for her. However, the origin of the provision is not determinative of the present issue. The contract was prepared and the parties made it their agreement. The terms of that agreement, entered into long before sections 22 (k) and 23 (u) were enacted, must now be regarded as expressing the agreement of the parties. Ruth felt obligated to support her mother. The petitioner and Ruth agreed that the petitioner would pay $5,000 annually for the mother's life directly to the mother "for and in behalf of" Ruth and that the payments to be made to Ruth and "for her benefit pursuant to the provisions hereof, shall be for her full and complete maintenance, support, * * * and for full satisfaction of the duty of support by the Husband." If the payments had been to a landlord, a grocer, or the like, there would be no question of their being taxable to Ruth. Cf. *Anita Q. Stewart*, 9 T. C. 195; *Estate of Boies C. Hart*, 11 T. C. 16. The payments discharged Ruth's obligation to support her mother. The $5,000 was constructively received by Ruth in discharge of a legal obligation imposed on the petitioner because of the marital or family relationship under a written instrument incident to the divorce. It is therefore taxable to Ruth under section 22 (k) along with the $20,000 and likewise is deductible by the petitioner under section 23 (u).

The petitioner was a partner in Lehman Brothers. Another partner, for services performed on behalf of the firm, received options to buy stock of The Fair, Inc., and Kresge Department Stores, Inc. The partnership bought and received shares under the option on February 1, 1943, at a cost of $17,215.29, and thereafter received all dividends on the shares. The shares were subject to restrictions and the parties hereto agree that the acquisition of the shares did not give rise to any income (compensation for services) in 1943 because they had no ascertainable fair market value due to the restrictions.

The restrictions terminated at midnight December 31, 1943. Lehman Brothers sold the stock in February and March 1944 for $69,928.32 and reported $52,713.03, the excess of the amount realized over cost, as a long term capital gain. The petitioner reported his share of the gain as a partner of the firm.

The Commissioner, in determining the deficiency, held that the firm realized ordinary income of $39,255.46, the excess of the fair market

value of the stock on January 1, 1944, over its cost, and reduced the reported capital gain accordingly.

The Commissioner's theory is that, since the shares were purchased at a bargain price under an option received for services but had no ascertainable fair market value at the time received because of the restrictions, compensation for services was derived on January 1, 1944, immediately after the restrictions terminated, to the extent of the excess of the fair market value of the shares on that day over their cost. He cites a number of cases holding that no income is realized when the shares are received subject to restrictions which preclude ascertainment of fair market value but none holding that compensation is received or a taxable event takes place when the restrictions terminate and fair market value can be determined. Termination of the restrictions was not a taxable event such as the receipt of compensation for services or the disposition of property. Values fluctuate from time to time and the value on a later date might be out of all proportion to the compensation involved in the original acquisition of the shares. The gain was properly reported as a long term capital gain from the subsequent sale of the shares.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: I must dissent from the conclusion of the majority on the subject of the first headnote. It depends upon whether payments by a divorced husband to the mother of his former wife, and "for and in behalf of" such former wife, who, it was agreed, was the sole support of her mother, can reasonably be considered within the intendment of section 22 (k) of the Internal Revenue Code. That section, *inter alia*, provides that a periodic payment by the divorced husband to the divorced wife shall be includible in her income and not in his if it is made in discharge of "a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband" under a decree of divorce or separate maintenance or under a written instrument incident thereto. The question is therefore how broadly such language shall be construed. I realize that in the broadest sense the obligation of the ex-husband here to pay the mother of his former wife might possibly be considered to be imposed upon him "because of the marital or family relationship," merely because without the marital or family relationship there would have been no such mother-in-law and no occasion for him to agree to support such a person. But I can not conceive that Congress intended to use the above-quoted crucial language in any such broad sense or had in mind the situation such as here involved. Rather, I

believe that the legal obligation, in discharge of which the periodic payment must be made in order for it to be taxable to the wife, must be one which is imposed upon the divorced husband, or recognized by him in a written instrument incident to the divorce or settlement or separation, as an essential and integral result of the marital relationship, such as, for example, caring for children or maintaining the former wife. Congress did not, in my view, include a mere promise to pay other matters even though made to the former wife and even though she might have had a duty in that respect, such as to take care of her mother. Obviously no ordinary contemplation of a marital obligation includes support of a mother-in-law. The fact that the $5,000 per annum to be paid to the divorced wife's mother is in addition to the $20,000 to be paid to the divorced wife, shows that the $5,000 was not necessary for the support of the wife and therefore not within reasonable bounds of a marital-based obligation. Though the written agreement involved recites that Ruth is the sole support of her mother and desires to make provision for her support, the facts neither so show nor show that the $5,000 was any reasonable requirement in that respect, that is, fail to show that Ruth was under any duty of furnishing that much for her mother. No divorce court could, in my opinion, require a divorced husband to support his former mother-in-law, without a voluntary agreement such as this appears to be. In any event, I do not believe that "because of the marital or family relationship," was meant to encompass the situation here involved or relieve the husband from taxation upon income earned by him. The Committee Reports of both the House and Senate covering section 22 (k) referring to the legal obligation here being discussed state: "This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the *general obligation to support*, which is made specific by the instrument or decree." (Emphasis added.) 1942–2 C. B., pp. 428, 568. Certainly, general obligation to support does not include obligation to support a mother-in-law. I therefore dissent.

TURNER and TIETJENS, *JJ*., agree with this dissent.