Katharine T. HYDE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 218, Docket 27145.

United States Court of Appeals Second Circuit.

Argued Feb. 21, 1962.

Decided April 5, 1962.

280

George A. Burrell, New York City (Wolf & Burrell, New York City, on the brief), for petitioner.

Giora Ben-Horin, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph Kovner, Attys., Dept. of Justice, Washington, D. C.), for respondent.

Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Katharine T. Hyde brings this petition to review a decision of the Tax Court which sustained the Commissioner's determination of a deficiency in her income tax for the years 1954 and 1955. The alleged deficiency resulted from the failure of petitioner to include in her income for these years the amount of insurance premiums paid by her husband on certain life insurance policies which had been irrevocably assigned by him to her, pursuant to the terms of a separation agreement. The only question raised by this petition is whether these premium payments should have been included in petitioner's income as periodic payments under Section 71 of the Internal Revenue Code, 26 U.S.C.A. § 71.

Petitioner and Gordon E. Hyde (Gordon) were married on January 31, 1925 and three children where born of this marriage: Donald R., born in 1926; Barbara L., born in 1929; and Harriet, born in 1934. On December 1, 1947, petitioner

and Gordon entered into a separation agreement which, in addition to provisions for annual cash alimony and maintenance for the two younger children, contained the following provisions:

> "*Second:* The Husband shall provide as and for the exclusive and personal support and maintenance of the Wife during her lifetime, or until the Wife shall remarry, as follows:
>
> \*   \*   \*   \*   \*   \*
>
> "(b) Pay to the Wife or, at her direction to the insurance companies direct, all insurance premiums on life insurance policies referred to in Paragraph Third (a) during his lifetime, as and when such premiums become due and payable (exclusive of grace period), and when paid by Husband direct deliver to the Wife, at least 15 days after such due date, the insurance companies' receipts evidencing such payments, with the limitation, however, that if the Wife shall subsequently be divorced and shall remarry, then the obligation for the Husband to pay premiums shall cease upon such remarriage.
>
> \*   \*   \*   \*   \*   \*
>
> "*Third:* The Husband does hereby convey, transfer, assign and set over to the Wife, the following:
>
> "(a) Whole or straight existing life insurance policies, payable to Wife as beneficiary without limitation or reservation, presently in the face amount of $51,500.00, enumerated and listed in Schedule A, attached hereto and made a part hereof, which policies Husband represents are free of loans, claims or other adverse interests."

On April 21, 1948, petitioner instituted divorce proceedings in the Supreme Court of the State of New York, Bronx County. The terms of the separation agreement relating to the payment of the insurance premiums were incorporated into an interlocutory divorce decree of that court which was entered on July 28, 1948, and became final three months later.

Pursuant to the separation agreement, Gordon irrevocably assigned to petitioner in 1947 and 1948 all his right, title, and interest in the four policies referred to in the agreement. At all times since 1948 petitioner has been in possession of these policies, and, as assignee, she owns all rights under these policies, including the right to change the beneficiary, to obtain cash loans, to receive dividends, to assign the policies, and to surrender the policies for their cash value. In accordance with the agreement, Gordon paid the annual premiums of $1,892.99 to the respective insurance companies in each year from 1948 to the present. At no time did petitioner exercise the right to have the premiums paid directly to her. The payment of the premiums increased the cash surrender value of these policies by $1,071.06 in 1954 and $963.98 in 1955.

This appeal raises the question whether a wife must include in her income amounts paid by her husband to insurance companies for premiums on policies that have been irrevocably assigned to her, when such payments are required by the terms of a separation agreement which provides for the payments to the wife or "at her direction" directly by the husband to the insurance companies.

Prior to the passage of the Revenue Act of 1942, alimony payments were not subject to taxation in the hands of the divorced wife and were not deductible by the husband. To correct this situation, which was thought to be unjust, the two provisions which are now sections 71 and 215 were added to the Internal Revenue Code, 26 U.S.C.A. §§ 71, 215. 56 Stat. 798, 816, see H.R.Rep. No. 2333, 77th Cong., 2d Sess. 71–74 (1942) ; Statement of Randolph Paul, Tax Adviser to the Secretary of the Treasury, Hearings on the Revenue Revision of 1942 Before the House Committee on Ways and Means, 77th Cong., 2d Sess. 92 (1942). Section 71 provides that periodic payments received by a wife in discharge of a legal obligation which, because of the marital or family relation, is imposed on, or incurred by, the husband under a written instrument incident to a divorce or separation are includible in the gross income of the wife.[1] Section 215 provides

---

1. "§ 71. Alimony and separate maintenance payments.

"(a) *General rule.*—

"(1) *Decree of divorce or separate maintenance.*—

"If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

"(2) *Written separation agreement.*—

"If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are at-

tributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

"(3) *Decree for support.*—

"If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

"(b) *Payments to support minor children.*—

"Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the

that the husband may deduct from his gross income amounts includible under section 71 in the gross income of his wife.[2] Thus, these two sections are complementary and are designed to provide an equitable distribution of the burden of income taxes between the husband and wife.

In accordance with the principles of division of income embodied in sections 71 and 215, petitioner rather than her husband should bear the tax burden on the sums paid by him for the insurance premiums. Gordon has not retained any interest in these policies, either for himself, his children, or any other party. These payments are made exclusively for petitioner's benefit and, therefore, they should be considered as periodic payments to her and included in her income under section 71.

Petitioner argues that since for the purpose of determining when periodic payments are received under section 71, a wife is treated as if she makes her returns on the cash receipts and disbursements method, Reg. § 1.71-1(5), she cannot be taxed on the amounts paid to the insurance companies because they were not received by her. However, the in-

clusion of the amount of the premium payments in petitioner's income rests on the well-established principle that a cash basis taxpayer must include in gross income amounts paid to third parties exclusively for the benefit of the taxpayer that are not intended to be gifts. E. g., Old Colony Trust v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929); United States v. Boston & Maine R.R., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929 (1929); see Fishman, Income Tax Aspects of Third Party Payments of Taxpayer Obligations, N.Y.U. 19th Inst. on Fed. Tax 31 (1961). Thus, it has been held that an employee, who has unfettered control over the ultimate disposition of the proceeds of annuity or life insurance policies, must include in his income the amount of the premiums paid by his employer on such policies, even though he could not have obtained in cash the amount paid by his employer. E. g.: Ward v. Commissioner, 2d Cir.1947, 159 F.2d 502; Commissioner of Internal Revenue v. Bonwit, 2d Cir.1937, 87 F.2d 764, cert. denied, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536; Hackett v. Commissioner, 1st Cir.1946, 159 F.2d 121; Hubbel v. Commissioner, 6th Cir.1945, 150 F.2d

sum payable for support shall be considered a payment for such support.

"(c) *Principal sum paid in installments.*—

"(1) *General rule.*—

"For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

"(2) *Where period for payment is more than 10 years.*—

"If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence,

the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

"(d) *Rule for husband in case of transferred property.*—

"The husband's gross income does not include amounts received which, under subsection (a), are (1) includible in the gross income of the wife, and (2) attributable to transferred property."

2. § 215. Alimony, etc., payments.

"(a) *General rule.*—

"In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income."

516; Oberwinder v. Commissioner, 8th Cir.1945, 147 F.2d 255; cf. United States v. Drescher, 2d Cir.1950, 179 F.2d 863, cert. denied, 340 U.S. 821, 71 S.Ct. 53, 95 L.Ed. 603; Elliot C. Morse, 17 T.C. 1244 (1952), aff'd, 2d Cir.1953, 202 F.2d 69. The theory of these cases is that the payment of the premium by the employer confers a benefit on the employee in the year that payment is made, which benefit has a value equal to the amount of the premium paid by the employer. United States v. Drescher, supra; Ward v. Commissioner, supra; Oberwinder v. Commissioner, supra.

This rationale applies to sustain the petitioner's liability in this case, for the payments made by Gordon to the insurance companies conferred a present benefit on petitioner equal in value to the amount of the premiums. This position is consistent with the reasoning of the Seventh Circuit in Seligmann v. Commissioner, 1953, 7 Cir., 207 F.2d 489, and with the position of the Tax Court in other cases applying sections 71 and 215, e. g., Lemuel A. Carmichael, 14 T.C. 1356 (1950); Anita Quinby Stewart, 9 T.C. 195 (1947); see also Robert Lehman, 17 T.C. 652 (1951), Rev.Rul. 62–39 (March 19, 1962); I.T. 4001, 1950-1 Cum. Bull. 27. In Seligmann, the court held that premiums paid by a husband were not includible in the income of his wife because she possessed only a contingent life interest in the proceeds of the policies. While the court recognized that a wife could receive taxable economic gain even though a payment in cash was not made to her directly, it found that "whatever right she had or acquired was dependent upon so many contingencies that its value could not be measured or ascertained." 207 F.2d at 494.[3] In this case, petitioner's interest is indefeasibly vested and she possesses all the rights under the policy. Therefore, it is proper to value the benefit that the payment of the premiums conferred on her by the amount that her husband had to pay to secure this benefit for her.

Finally, petitioner argues that, even if she is taxable on the economic gain which resulted from the payment of the premiums by her husband, she should be taxed only on the amount by which the payment of the premiums increased the cash surrender value of the policies. However, the right to receive the cash surrender value of the policies is only one of the valuable rights which the payment of the premiums bestowed on petitioner. For example, part of the premium is attributable to petitioner's right to receive the face amount of the policies if her husband dies during the year and to her right to receive any dividends on the policies. Petitioner has failed to show, indeed the stipulated facts indicate that it would be impossible to show, the existence of a right under these policies in anyone other than herself to which any part of these payments could be attributed. Petitioner contends that the fact, that her husband's obligation to pay the premiums ceases on her death or remarriage, reduces the benefit conferred on her by the present premium payments. This contingency does not reduce the value to her of the present payment, because by paying these premiums, Gordon thereby secures for petitioner or her estate the right to maintain these policies in the future at premiums which would be less than would have to be paid if the same amount of insurance on his life were secured at the time of her death or remarriage.

Affirmed.

---

3. Accord Weil v. Commissioner, 2 Cir. 1957, 240 F.2d 584; Smith's Estate v. Commissioner, 3 Cir. 1953, 208 F.2d 349; Carl G. Ortmayer, 28 T.C. 64 (1957), aff'd in part and rev'd in part, on other grounds, 7 Cir. 1959, 265 F.2d 848; cf. Rev.Rul. 62–38 (March 19, 1962).