349 F.2d 110
 65-2 USTC P 9539
 Robert J. KIESLING and Betty Lester Kiesling
v.
UNITED STATES of America and William F. Culliney, District
Director, InternalRevenue Service at Camden, New
Jersey, Appellants.
 No. 15002.
 United States Court of Appeals Third Circuit.
 Argued Feb. 15, 1965.
Decided June 30, 1965.
 
 Thomas Silk, Jr., Atty., Dept. of Justice, Tax Div., Washington, D.C. (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Robert N. Anderson, Attys., Dept. of Justice, David M. Satz, Jr., U.S. Atty., Herman Wilson, Asst. U.S. Atty., on the brief), for appellants.
 George D. Rothermel, Camden, N.J. (Samuel Kalikman, Camden, N.J., on the brief), for appellees.
 Before KALODNER and SMITH, Circuit Judges, and KIRKPATRICK, District judge.
 KALODNER, Circuit Judge.
 
 
 1
 Were life insurance premiums here paid by the taxpayer[1] under the provisions of a divorce decree deductible under Section 215 of the Internal Revenue Code of 1954?[2]
 
 
 2
 The District Court held[3] that the taxpayer was entitled to deduct 69.14 per cent of the premiums[4] on its view that the taxpayer was under a 'legal obligation' to pay the premiums, and his wife's 'interest' in the policy was 'absolute' and 'vested'.
 
 
 3
 On this appeal the Government contends that the issue of deductibility of the premium payments turns on the single question as to whether they constituted income to the wife, via the inurement of an ascertainable economic benefit under the policy involved.
 
 
 4
 The undisputed facts, critical to our disposition, are as follows:
 
 
 5
 The taxpayer divorced his wife on July 29, 1936. The divorce decree provided he was to pay her $2600.00 a year during her lifetime or until she remarried and to make provision in his will for similar payments in the event that he predeceased her at a time when she was unmarried.[5]
 
 
 6
 The divorce decree contained this further provision:
 
 
 7
 'IT IS FURTHER ORDERED, ADJUDGED AND DECREED that during the lifetime of the defendant he shall keep and continuously maintain good and sufficient life insurance upon his life, of which the plaintiff shall be sole beneficiary in the event of his death, in the sum of Twenty-five Thousand ($25,000.00) Dollars, same to be in the form of term or continuing policy insurance, and to be maintained during the lifetime of the plaintiff, and so long as she shall remain unmarried, the policies evidencing such insurance to be delivered to and to remain the the possession of the plaintiff; * * *.'
 
 
 8
 Pursuant to this provision, the taxpayer obtained a life insurance policy which he delivered to his wife. It has remained in her possession. The policy reserved to the taxpayer the right to change his beneficiary, and inter alia, the right to assign it; to borrow on it, etc. It specifically provided that the wife, as revocable beneficiary, obtained '* * * no vested interest hereunder, and the Insured may exercise every right, receive every benefit and enjoy every privilege conferred by this policy. * * *'
 
 
 9
 The Commissioner disallowed the taxpayer's claimed deductions for the premiums paid on the policy during the years 1957 to 1959, inclusive. The taxpayer than paid the assessed deficiency and brought the instant action for refund in the District Court.
 
 
 10
 Pertinent here are these provisions of the Internal Revenue Code of 1954:
 
 
 11
 'Section 71(a)(1):
 
 
 12
 'Decree of divorce or separate maintenance.-- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.'
 
 
 13
 'Section 215(a):
 
 
 14
 'General Rule.-- In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *'
 
 
 15
 The sum of the foregoing provisions is that under Section 71(a)(1) the wife's gross income includes periodic payments received from her husband in discharge of his legal obligation as specified in a decree of divorce, and under Section 215(a) a husband is allowed to deduct such payments.
 
 
 16
 It is settled that where a wife's interest as beneficiary in a life insurance policy obtained by her husband is contingent, and not absolute, she has not received any taxable economic benefits so as to make the premiums on such policy, paid by her husband pursuant to the terms of a divorce decree, taxable to her, and as a corollary, deductible to her husband.
 
 
 17
 In the instant case the contingent nature of the wife's interest in the policy is demonstrated by these factors: her interest in the policy ceased upon her death or remarriage during the taxpayer's lifetime; her designation as beneficiary was revocable; the policy had not been assigned to her and she had no right to assign it, or to obtain its cash surrender value or to borrow on it; under the policy's specific provisions she obtained 'no vested interest' in it; and the taxpayer retained the right to 'exercise every right, receive every benefit and enjoy every privilege conferred by this policy.'
 
 
 18
 In Smith's Estate v. Commissioner of Internal Revenue, 208 F.2d 349, 353 (3 Cir. 1953) we held that premiums paid by a husband under a divorce decree on his life insurance policy were not deductible by him 'because by the terms of the contract (policy) this insurance money went to the wife only if she outlived her husband. The beneficial ownership of the policy was in her subject to this very important contingency.'
 
 
 19
 Seligmann v. Commissioner of Internal Revenue, 207 F.2d 489 (7 Cir. 1953), a leading case, is to the same effect. It was there held that life insurance premiums paid by the taxpayer's husband under a separation agreement were not taxable to her because she had to survive her husband in order to benefit from the proceeds of the policies, and even then the amount of the benefits would depend upon whether or not she was remarried.[6]
 
 
 20
 In discussing the tax consequences of the husband's payment of the life insurance premiums the Court said in part at page 494:
 
 
 21
 '* * * we are unable to discern how it can be thought that petitioner (wife) realized a taxable economic gain during the years in question. Certainly, as noted, she received no cash, either actually or constructively, and it would appear equally certain that she received no property capable of measurement or ascertainment. The most that can be said is that the right which she acquired at the time the separation agreement was executed was preserved to her from year to year, including those here involved, by the husband's payment of the premiums on his life insurance policies which he was obligated to make. After the payments were made she had no different or greater right than she had before. In any event, whatever right she had or acquired was dependent upon so many contingencies that its value could not be measured or ascertained during the taxable year. And it was a matter of rank speculation or conjecture as to whether petitioner would ever realize any economic gain. The only benefit which we are able to discern accruing to petitioner during the taxable years was an aid to her peace of mind, which could be expected to result from knowledge that at some unforeseeable time in the future she might * * * benefit from the proceeds of the insurance policies. Under the terms of the agreement she never could receive one cent unless she lived longer than her husband, and even then the amount of or the extent of the benefit would depend upon whether she was remarried. Mere peace of mind or the satisfaction which stems from knowledge that protection may be of benefit in the future does not constitute taxable economic gain.'
 
 
 22
 In Weil v. Commissioner of Internal Revenue, 240 F.2d 584 (2 Cir. 1957), cert. den. 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909, the husband, under a separation agreement, became obligated to pay the premiums on certain life insurance policies of which his wife was the prime beneficiary. As here, her interest in the policies ceased upon her death or remarriage during her husband's lifetime; she had no right to change the beneficiary, to assign the policies, or to obtain their cash surrender values. Also, as here, the policies were delivered to her. There was the further circumstance, absent here, that the husband contracted 'that he will not assign, transfer or encumber said policies * * * and that he will not surrender or in any other manner change the benefits or terms of said policies during the lifetime of the Wife or until her remarriage, without her written consent.' The policies, incidentally, provided that an assignment was to be in writing in order to be binding.
 
 
 23
 On the fact stated the Court held that the husband could not deduct the premiums because he had not assigned the policies to his wife. In doing so it said at page 587:
 
 
 24
 'While certain restrictions were placed upon the husband's control of the policies, he clearly retained ownership. The Tax Court was correct in refusing to treat the premium payments as constructively received by the wife.'
 
 
 25
 In Hyde v. Commissioner of Internal Revenue, 301 F.2d 279 (2 Cir. 1962), it was held that the divorced wife was required to include in her income the premiums paid by her former husband, under a separation agreement, on his life insurance policies which he had assigned to her, in which she was the named beneficiary 'without limitation or reservation.'
 
 
 26
 The Court premised its holding on the circumstances that the husband has assigned the policies to his wife and 'not retained any interest' in them (p. 282), and that she 'is indefeasibly vested and she possesses all the rights' under the policies. (p. 283).
 
 
 27
 In Piel v. Commissioner of Internal Revenue, 340 F.2d 887 (1965) the Second Circuit recently refused to reconsider its prior rulings in Weil and Hyde, stating at page 890:
 
 
 28
 '* * * it is apparent that the weight of recent authority has equated benefits with ownership and has refused to allow a deduction where the beneficiary has failed to obtain non-contingent substantial proprietary rights in the proceeds of the policies and thus in the benefits generated by the premium payments. 'In effect, petitioners ask that the weight of authority, including Weil and Hyde, be distinguished or reconsidered by this court and that we reverse the decision of the Tax Court. But after careful consideration * * * we affirm the decision of the Tax Court and adhere to the position that ownership of the policies is necessary to support a deduction.'
 
 
 29
 Since in the instant case the taxpayer retained ownership of his life insurance policy, and, as stated in detail, his wife's interest as beneficiary was contingent, and not absolute, the premiums paid were not deductible under Section 215.
 
 
 30
 For the reasons stated the Judgment of the District Court will be reversed and the cause remanded with directions to proceed in accordance with this Opinion.
 
 
 
 [1]
 The taxpayer's present wife Betty Lester Kiesling, is a party to this action because there was a joint income tax filed. For convenience, the terms husband and wife used in this opinion relate to the taxpayer and his divorced wife, Doris A. Kiesling
 
 
 [2]
 26 U.S.C.A. 215
 
 
 [3]
 The opinion of the District Court is not reported
 
 
 [4]
 The District Court's premise for the partial deduction is set forth in paragraph 11 of its 'Findings of Fact' as follows: 'Taking into account the respective ages of Robert J. Kiesling and Doris A. Kiesling, and that the interest of Doris A. Kiesling in the policy of insurance terminates in the event of her death or remarriage prior to the death of Robert J. Kiesling, the actuarial value of the economic benefit to her of the annual life insurance premiums paid in each of the years 1957, 1958 and 1959 is 69.14% Of such premium; since such premium in each year was $2,133.00, said economic benefit is 69.14% Thereof, or $1,474.76
 
 
 [5]
 The payments were to be made in semimonthly installments during taxpayer's lifetime and in monthly installments following his decease
 
 
 [6]
 There the separation agreement provided that in the event of the wife's remarriage her benefits under the policy would be reduced