Wanda Z. Stevens v. Commissioner. Richard E. and Helen V. Stevens v. Commissioner.
Stevens v. Commissioner
Docket Nos. 4967-67, 5453-67.
United States Tax Court
T.C. Memo 1969-137; 1969 Tax Ct. Memo LEXIS 161; 28 T.C.M. (CCH) 711; T.C.M. (RIA) 69137; June 30, 1969, Filed Robert B. Berger, for the petitioner in docket No. 4967-67. Stanley Pressment, 666 5th Ave., New York, N. Y., for the petitioners in docket No. 5453-67. John K. Antholis and Marvin A. Fein, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: In these consolidated cases respondent has determined deficiencies in petitioners' income taxes for the calendar year 1964 as follows: Docket
Petitioners
Deficiencies
No. 4967-67
Wanda Z. Stevens
$448.47
No. 5453-67
Richard E. and Helen V. Stevens
419.96
*162 In docket No. 4967-67, a determination as to personal exemptions has been disposed of by agreement of the parties; [1] consequently the sole remaining issue left for decision is whether premiums paid by petitioner Richard E. Stevens on a life insurance policy under which petitioner Wanda Z. Stevens is the beneficiary for a particular amount each year until Richard E. Stevens' obligation to pay alimony ceases, are includable in the gross income of Wanda Z. Stevens as alimony and accordingly, therefore deductible by Richard E. Stevens. The petitioners' respective contentions regarding the treatment of the premiums are antithetical. Petitioner in docket No. 4967-67 contends that the life insurance premiums are not taxable as income under section 71 of the 1954 Internal Revenue Code. [2] Petitioners in docket No. 5453-67 contend that the life insurance premiums are taxable as income under section 71 and are therefore deductible by them under section 215. Respondent, *163 in his statutory notices of deficiency, took inconsistent positions. At trial, however, and on brief, he has supported the position taken by petitioner in docket No. 4967-67. Findings of Fact All of the facts herein are stipulated, and as stipulated are incorporated herein by this reference and adopted. Wanda Z. Stevens (hereinafter sometimes referred to as Wanda), petitioner in docket No. 4967-67, resided in Enfield, Connecticut, at the time of the filing of her petition herein. She reported her income on the cash basis and filed a Federal income tax return, as an unmarried head of household, for the 1964 calendar year with the district director of internal revenue, Hartford, Connecticut. Richard E. (hereinafter sometimes referred to as Richard) and Helen V. Stevens, petitioners in docket No. 5453-67, are husband and wife whose residence at the time of the filing of their petition herein was Hazardville, Connecticut. They reported their income on the cash basis and filed a joint Federal income tax return for the 1964 calendar year with the district director of internal revenue, Hartford, Connecticut. Helen V. Stevens, the present wife of Richard, is involved in these proceedings *164 only because a joint return was filed for 1964. None of the questions presented herein relate to her. Wanda and Richard were married in 1943, at New York City, New York, and had three children as issue of such marriage: Donna R., born May 17, 1945; Richard K., born November 25, 1946, and Edward P., born July 18, 1948. Wanda and Richard were divorced pursuant to a decree issued on February 21, 1962, by the Superior Court, Hartford County, State of Connecticut. Said decree read in part (p. 2): that the plaintiff will post as security for the payment of alimony, support and education payments, life insurance policies, wherein the defendant wife is named as beneficiary, whose total benefits shall equal Sixty-five Thousand ($65,000) Dollars; that on February 20, 1973, the Plaintiff husband will name, or cause to be named, the said three children, or the survivors among them, irrevocably, as beneficiaries, in equal shares, of life insurance policies totalling Sixty-five Thousand ($65,000) Dollars net proceeds; that he will pay the premiums on the hereinbefore mentioned life insurance policies to keep the same in full force and effect; 713 On October 12, 1963, Richard filed an *165 application with Phoenix Mutual Life Insurance Company of Hartford, Connecticut (hereinafter referred to as Phoenix), for an ordinary life insurance policy in the face amount of $65,000, naming his present wife Helen as beneficiary; on November 5, 1963, a policy was issued by said insurance company showing Richard as the owner and his wife, Helen, as the beneficiary. Pursuant to the provisions of the divorce decree, Richard and Wanda, on November 25, 1963, executed a special settlement agreement (hereinafter sometimes referred to as settlement agreement) which modified the provisions of the above policy. The purpose of the settlement agreement (and insurance policy thereunder) was to supersede the insurance policies previously utilized by Richard to comply with the divorce decree of February 21, 1962. The settlement read in part: The present beneficiary designation of policy No. * * *, issued by the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, on the life of Richard E. Stevens, the insured, is hereby revoked. Subject to the conditions and provisions of said policy, the beneficiary designation shall be as provided in the following Special Settlement Agreement. *166 SPECIAL SETTLEMENT AGREEMENT If the insured shall die prior to February 20, 1973 the amount payable on account of the death of the insured, reduced by the amount obtained by multiplying the sum of $6,750.00 by the number of whole years between February 27, 1962 * and the date of death of the insured, shall be payable to Wanda Z. Stevens, former wife of the insured, if living at the death of the insured. Any remainder of said amount, over and above the amount payable to the said Wanda Z. Stevens as hereinbefore provided, or the entire said amount, if the insured shall die prior to February 20, 1973 and the said Wanda Z. Stevens is not living at the death of the insured, or the entire said amount if the insured shall die on or after February 20, 1973 shall be payable in equal shares to such of the following children of the insured, namely, Donna R. Stevens, Richard K. Stevens and Edward P. Stevens as are living at the death of the insured, but if no child herein named of the insured is then living to the executor or administrator of the survivor of the said Donna R. Stevens, Richard K. Stevens and Edward P. Stevens. CHANGE OF OWNER Said Company is hereby requested to change *167 the above numbered policy so that the owner of said policy shall be Wanda Z. Stevens, former wife of the insured, while living, and after her death Donna R. Stevens, Richard K. Stevens, and Edward P. Stevens, children of the insured, jointly, survivors or survivor, while living and after the death of the survivor of the said Wanda Z. Stevens, Donna R. Stevens, Richard K. Stevens and Edward P. Stevens, the executor or administrator of the survivor of the said Donna R. Stevens, Richard K. Stevens and Edward P. Stevens. * * * Said policy and the right reserved therein to the owner to change the beneficiary designation shall be subject to the following Special Provision. SPECIAL PROVISION This policy and the rights reserved to the owner are subject to the Decree for Divorce of the Superior Court, Hartford County, State of Connecticut between Richard E. Stevens and Wanda Z. Stevens dated February 27, 1962, * a copy of which has been filed at the Home Office of the Company at Hartford, Connecticut. *168 Enfield, Conn.
Signed at (City and State) 11/25/63 on (Date) (Signed) Frank P. Sheldon Witness: Richard E. Stevens (Signed) Insured (Signed) Frank P. Sheldon Witness: Wanda Z. Stevens (Signed) Wanda Z. Stevens * * * Richard, in his income tax return for 1964, deducted, in addition to those payments made directly to Wanda, the $1,787.05, paid to Phoenix for premiums as alimony. Wanda, in her income tax return for 1964, 714 reported as income only those payments that she received directly from Richard. In his notice of deficiency to Richard, respondent determined that the amounts paid by Richard to Phoenix were not alimony and accordingly disallowed the deduction of $1,787.05 taken on the 1964 return. In his notice of deficiency to Wanda, respondent increased her alimony income by $1,787.05. Opinion In these consolidated cases we must decide whether any part of the premiums paid by Richard, on a life insurance policy issued pursuant to a decree of divorce, under which Wanda is the beneficiary to a lessening amount each year until February 20, 1973, is includable in Wanda's gross income under section 71 and therefore deductible by Richard under *169 section 215. Prior to 1942 the revenue laws did not tax alimony payments to the wife who received them or allow a deduction by a husband for such payments. In 1942, due to the increased surtax rates and the income tax hardship on many husbands paying alimony, the Internal Revenue Code of 1939 was amended to permit deductions for payments made under certain specified circumstances. See Martha K. Brown, 50 T.C. 865, 867 (1968), on appeal (C.A. 4, December 13, 1968). Under section 215 of the 1954 Code the husband is allowed a deduction if payments made within his taxable year are includable in the gross income of the wife under section 71. Section 71 provides, inter alia, that before payments to a former wife are includable in her income and therefore deductible by her former husband, there must be (1) a divorce under a decree of divorce; (2) the payments must be periodic (see section 1.71-1(d), Income Tax Regs.); (3) the payments must be received after said decree; (4) the payments must be in discharge of a legal obligation arising out of the marital or, family relationship; (5) the obligation must be imposed or incurred under the decree or under *170 a written instrument incident to such divorce; and (6) amounts paid under the terms of the decree for the support of minor children will not be considered as alimony. With the exception of (3) above, Wanda, on brief does not contest any of the above requirements. Her position is simply that she "did not receive in the taxable year in question cash or property of ascertainable value, either actually or constructively." As we understand Richard, he rests his case on two theories, the first of which is that regardless of Wanda's rights in the Phoenix insurance policy the payment of annual insurance premiums to Phoenix resulted in an economic benefit to her, which benefit constituted receipt of periodic payments paid in discharge of a legal obligation, arising out of the marital or family relationship, imposed upon him under the decree of divorce. Richard's second theory is grounded on the proposition that since Wanda was both the owner of, and the beneficiary under the policy until February 20, 1973, she therefore had sufficient rights in it, to require that she include some part of the premium in her gross income as alimony. We shall first address ourselves to Richard's primary *171 contention, because if he is correct his theory would require a new and different approach to the taxation of insurance premiums when the premiums are paid for the purpose of providing alimony if the husband should predecease his former wife. This is so because, in the past, this Court, see Katharine T. Hyde, 36 T.C. 507 (1961), affd. 301 F. 2d 279 (C.A. 2, 1962), and the Courts of Appeals that have considered this question, Blumenthal v. Commissioner, 183 F. 2d 15 (C.A. 3, 1950); Seligmann v. Commissioner, 207 F. 2d 489 (C.A. 7, 1953), reversing a Memorandum Opinion of this Court, and followed by us in Leon Mandel, 23 T.C. 81 (1954), affd. 229 F. 2d 382 (C.A. 7, 1956); Weil v. Commissioner, 240 F. 2d 584 (C.A. 2, 1957), affirming Beulah Weil, 22 T.C. 612 (1954) on this issue, certiorari denied 353 U.S. 958 (1957), have included the premium or a part thereof, paid to an insurance company, in the wife's income as alimony only after finding that the wife possessed sufficient rights in the policy, such as the right to the cash surrender value or rights which constituted *172 her the "complete owner." Katharine T. Hyde, supra. In support of his first contention Richard argues that (a) nothing in sections 71 and 215 prevent the annual insurance premium from constituting periodic payments for each of the years Wanda obtains protection; (b) that if the monthly alimony had 715 been set higher by the divorce decree so as to take into account the annual insurance premium which Wanda would then pay directly to Phoenix, the entire alimony paid by Richard would be deductible; (c) that our decision in Robert Lehman, 17 T.C. 652 (1951), and respondent's position in Rev. Rul. 62-106, 1962-2 C.B. 21, lend support to Richard's contentions; and (d) Richard directs our attention to the first dissent to our holding in Florence H. Griffith, 35 T.C. 882, 894 (1961), wherein it was stated that the premiums paid on a life insurance policy of which the wife was to have the power to surrender for cash, procured valuable rights for her which should be taxable to her just as though her husband had "paid her grocery bill or fire insurance premiums." If Richard is to prevail under his first theory the insurance premiums *173 must be considered as alimony received by Wanda under section 71, since section 215, which authorizes a deduction for the payment of alimony, is complimentary to section 71. As noted above, Richard argues that nothing in section 71 or section 215 prevents the annual insurance premiums from constituting a periodic payment for each of the years Wanda obtained protection. We disagree for two reasons. First, section 71 "applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree." H. Rept. No. 2333, 77th Comg., 2d Sess. (1942), 1942-2 C.B. 372, 428; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 568; section 1.71-1(b)(4), Income Tax Regs. (1957). We do not believe that Congress intended that the legal obligation arising "out of the family or marital relationship in recognition of the general obligation to support" was meant to encompass an ancillary agreement to pay insurance premiums when the purpose of the policy is to provide security for the wife in the event that *174 her former husband should predecease her. Secondly, we observe that section 71 provides that "the wife's gross income includes periodic payments * * * received." Wanda did not actually receive the insurance premiums herein because the payments were made to Phoenix by Richard. The only other alternative therefore would be to find that she received these payments constructively. Section 1.451-2(a), Income Tax Regs., states that - Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, * * * The premium payments herein were never credited to Wanda's account or set apart for her so that she could draw upon them, therefore we cannot find that Wanda received gross income under section 71. We recognize of course that Wanda received some benefit and Richard points out that if the alimony payments had been larger, with Wanda paying the premiums, there would be no problem as to the amounts taxable to her and correspondingly deductible by him. This argument is without *175 weight because these are not the facts of this case. We have always looked to the substance of transactions over their raw form, J. Leonard Schmitz, 51 T.C. 306, 317 (1968), on appeal (C.A. 9, March 18, 1969), however, we cannot determine Federal tax questions upon "ifs." Richard is not posing a real substance over form point. He might as well have argued that if his alimony payments had been greater, and his child support payments correspondingly less, he would have been entitled to a larger alimony deduction. We think that the Court of Appeals for the Seventh Circuit, in Seligmann v. Commissioner, supra (207 F. 2d 489 (C.A. 7, 1953)), best articulated the nature of the benefit realized by a former wife in such a case as this when it stated (p. 494): Applying the rationale of these cases to our instant question, we are unable to discern how it can be thought that petitioner realized a taxable economic gain during the years in question. Certainly, as noted, she received no cash, either actually or constructively, and it would appear equally certain that she received no property capable of measurement or ascertainment. The most that can be said is that *176 the right which she acquired at the time the separation agreement was executed was preserved to her from year to year, including those here involved, by the husband's payment of the premiums on his life insurance policies which he was obligated to make. After the payments were made she had no different or greater right than she had before. In any event, whatever right she had or acquired was dependent upon so many contingencies that its value could not be measured or ascertained during the taxable year. And it was a matter of 716 rank speculation or conjecture as to whether petitioner would ever realize any economic gain. The only benefit which we are able to discern accruing to petitioner during the taxable years was an aid to her peace of mind, which could be expected to result from knowledge that at some unforeseeable time in the future she might and the children certainly would benefit from the proceeds of the insurance policies. Under the terms of the agreement she never could receive one cent unless she lived longer than her husband, and even then the amount of or the extent of the benefit would depend upon whether she was remarried. Mere peace of mind or the satisfaction *177 which stems from knowledge that protection may be of benefit in the future does not constitute taxable economic gain. Richard, in further support of his argument that the annual insurance premiums are taxable to Wanda, refers us to our decision in Robert Lehman, supra; Rev. Rul. 62-106, 1962-2 C.B. 21, and a statement by the dissent in Florence H. Griffith, supra at 899. In Lehman we held that payments made by a divorced husband to the mother of his former wife were deductible as alimony because they were constructively received by the former wife and were made in discharge of a legal obligation imposed on the husband because of the marital or family relationship under a written instrument incident to the divorce. Lehman is entirely distinguishable from the case sub judice. In Lehman the former wife was the sole support of her mother and the instrument incident to the decree provided that the payments were to be made "for and in behalf of" the former wife. The majority relied on the clause in the agreement that the payments were to be made to the mother "for and in behalf of" the former wife, and held that the payments were constructively *178 received by her and therefore taxable to her under section 71. In the instant case we have no such clause as found in Lehman. We do not, however, rest our distinction on the mere form of the agreement. Furthermore, we do not suggest that the panacea for husbands paying insurance premiums would be to insert that the premiums are to be paid for and in behalf of the former wife. Our reason for this is that in Lehman the majority also found as a necessary concomitant to the inclusion in the former wife's income, that the payments were made in discharge of a legal obligation arising out of the family or marital relationship. As noted above, we do not believe that Congress intended life insurance premiums under an ancillary agreement, as we have in the instant case, to fall within section 71. Accordingly, Richard's reliance on respondent's ruling, Rev. Rul. 62-106, 1962-2 C.B. 21, is misplaced, for there it was decided that the payment of the former wife's medical and dental expenses by her husband constituted alimony. Richard's final contention in support of his argument that the premiums should be includable in Wanda's gross income (and therefore deductible by him) *179 is founded on a statement by the first dissent in Florence H. Griffith, 35 T.C. 882, 894, (1961), to wit: The premiums paid by the husband thus procured valuable rights for the wife which should be taxable to her just as though he had paid her grocery bill or fire insurance premium. Richard's reliance on this statement is erroneous. The dissent in Griffith believed that the premiums should be taxable, not because they were paid by the husband but, because they procured valuable rights for the wife, principally the right to obtain the cash surrender value of the insurance policy. As noted earlier, this Court in the past has included the premiums or a part thereof paid to an insurance company in the wife's income as alimony only after finding that the wife possessed sufficient rights in said policies; furthermore, in describing the rights possessed by former spouses, we have used the words contingent and irrevocable. See, e.g., Lilian Bond Smith, 21 T.C. 353, 363-364 (1953). Richard argues that because Wanda was both the owner and the beneficiary until February 20, 1973, she had sufficient rights in the policy to require that she include some part of *180 the premium in her gross income as alimony. He argues that Wanda was the absolute and irrevocable beneficiary of the insurance policy until February 20, 1973, and that respondent's rulings in I.T. 4001, 1950-1 C.B. 27, and Rev. Rul. 57-125, 1957-1 C.B. 27, support his contention that some part of the premiums are taxable to her as alimony. We find Richard's position on this issue untenable. Wanda was not the irrevocable beneficiary of the policy, since after February 20, 1973, and even before such date, 717 if she were to remarry or die, her interest in said policy would expire. Respondent's rulings are inapposite, since in I.T. 4001, supra, insurance premiums were paid on two policies and the wife there was held to have received income only from premiums paid on the policy which was absolutely assigned to her. As Richard recognizes, Rev. Rul. 57-125, supra, is distinguishable from the instant case because there a formal assignment of the policy was never made; he, however, argues that respondent's position as stated in said ruling is consistent with Richard's position herein. We disagree. Respondent, in Rev. Rul. 57-125, *181 grounded his conclusion on the fact that the policy therein was never formally assigned and although the facts therein state that the wife was the "first beneficiary," said ruling fails to state for what length of time; moreover, the ruling cites with approval the holding of I.T. 4001, supra. Finally, Richard argues that Wanda was not only a beneficiary, but was the owner of the Phoenix policy and therefore had a sufficient interest in it to require that a part of the premiums be included in her gross income as alimony. We agree that Wanda was the "owner" of the policy, however, her interest as an owner, if any, is entirely inconsequential. Her rights as an owner continued only while she remained single and during her lifetime, and even then they were subject to the settlement agreement and the special provisions therein relating to the decree of divorce. The proceeds payable to Wanda, if Richard were to die, diminished each year and she as "owner" could not receive any greater amount, either for herself or for any other person. Nor could she alienate the rights of her children in the policy. In short, Wanda's rights as the owner of the policy were so fettered, that to accept Richard's *182 argument would be to give credence to a mere label. For all of the above reasons we find and hold (on the remaining issue) for petitioner, Wanda, in docket No. 4967-67, and for respondent in docket No. 5453-67. Decision will be entered under Rule 50. Footnotes
1. As a consequence it appears a Rule 50 computation will be necessary.↩
2. All statutory references herein are to the Internzl Revenue Code of 1954, as amended, unless otherwise indicated.↩
*. Respondent and petitioners herein have stipulated that Richard and Wanda were divorced pursuant to a decree of divorce dated February 21, 1962, and have offered as a joint exhibit a certified copy of said decree. It is presumed that the date of February 27, 1962, referred to above, is a typographical error.↩