GARY DEE AND JUNE LILLIAN BLAIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blair v. Commissioner
Docket No. 27082-86.
United States Tax Court
T.C. Memo 1988-581; 1988 Tax Ct. Memo LEXIS 610; 56 T.C.M. (CCH) 923; T.C.M. (RIA) 88581; December 27, 1988
Gary Dee Blair and June Lillian Blair, pro sese. Leonard A. Hammes, for the respondent. BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code *612 and Rules 180, 181 and 182. [1]
Respondent determined deficiencies in Gary Dee and June Lillian Blair's (hereafter "petitioners") joint Federal income tax for 1982 and 1983 in the amounts of $ 1,976 and $ 2,770, respectively. Petitioners lived in Omaha, Nebraska, when they filed their petition. After concessions [2] the issues [3] for decision are 1) whether periodic payments of alimony and child support pursuant to a divorce decree must first be allocated to child support when the periodic payments are less than the amount called for in the divorce decree; 2) whether petitioners are entitled to deductions for ordinary and necessary business employee auto expenses under section 162, and if so, whether petitioners substantiated the employee auto expenses; and 3) whether petitioners substantiated claimed charitable contributions. *613 Some of the facts have been stipulated. The stipulated facts and exhibits are found and are incorporated herein by reference. For clarity, we have combined our findings of fact and opinion for each issue in this case. Alimony
On January 3, 1980, by Nebraska divorce decree (hereafter "decree"), the marriage of Gary Dee Blair (hereafter "petitioner") and Mary Ann Blair was officially dissolved. The decree provided that petitioner pay Mary Ann Blair $ 350 per month for their son, Jon Blair, as child support and $ 150 per month as alimony, beginning on January 1, 1980. The decree did not provide for modification. Petitioner made payments under the decree to Mary Ann Blair. On December 27, 1981, Gary Dee Blair married June Lillian Blair. His new wife had seven children. Since "money was getting tight," petitioner consulted with Mary Ann Blair (hereafter "former wife") concerning the alimony and child support payments. He requested and his former wife orally agreed to reducing the child support payments to $ 200 per month. The alimony payments remained at $ 150 per month. Therefore during 1982 Gary Dee Blair sent 11 checks to his former wife, each in the amount of $ *614 350 for a total of $ 3,850. [4] In 1982 petitioners deducted $ 1,800 as alimony payments and Mary Ann Blair declared $ 1,800 as income. Respondent disallowed the entire alimony deduction for 1982. In 1983 petitioner made eight payments of $ 350 per month to Mary Ann Blair pursuant to their oral agreement. During September 1983 his son Jon came to live with petitioners. Since petitioners now supported Jon, in addition to June Blair's seven children, petitioner wanted to stop paying child support to Mary Ann Blair. Therefore, with Mary Ann Blair's acquiescence, he dropped his payments to her from $ 350 to $ 150 per month. He sent three monthly payments of $ 150 and for December 1983, petitioner sent a $ 100 payment. In 1983 petitioners deducted $ 1,800 as alimony payments and Mary Ann Blair declared $ 1,800 as income. Since in September 1983, Jon lived with petitioners, respondent agreed that the $ 150 payments from September 1983 through November 1983, and the $ 100 December 1983 payment to Mary Ann Blair represented alimony and were deductible. Therefore, respondent allowed *615 $ 550 and disallowed $ 1,250 of $ 1,800 alimony deduction claimed. Petitioner is an attorney. The record does not show that he sought advice or otherwise determined the proper requirements for modification of a divorce decree. He formed an oral agreement with his former wife to modify the child support payments. He did not memorialize the oral agreement in writing. He did not obtain a court order to modify the divorce decree. Instead he relied solely on the oral agreement between his former wife and himself. Section 71(a) of the Code provides that gross income includes amounts received as alimony or separate maintenance payments. Section 215(a) provides for the corresponding deduction of alimony payments paid during the year and defines "alimony" by reference to section 71. Section 71(b) provided that the portion of any payment "which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children" shall not be included within the gross income of the recipient. Correspondingly, such amounts are not deductible pursuant to section 215. Section 71(b) went on to provide: *616 if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support. Section 1.71-1(e), Income Tax Regs., provides as follows: (e) Payments for support of minor children. Section 71(a) does not apply to that part of any periodic payment which, by the terms of the decree, instrument, or agreement under section 71(a), is specifically designated as a sum payable for the support of minor children of the husband. The statute prescribes the treatment in cases where an amount or portion is so fixed but the amount of any periodic payment is less than the amount of the periodic payment specified to be made. In such cases, to the extent of the amount which would be payable for the support of such children out of the originally specified periodic payment, such periodic payment is considered a payment for such support. For example, if the husband is by terms of the decree, instrument, or agreement required to pay $ 200 a month to his divorced wife, $ 100 of which is designated by the decree, instrument, or agreement to be for the support of their *617 minor children, and the husband pays only $ 150 to his wife, $ 100 is nevertheless considered to be a payment by the husband for the support of the children. * * * The statute and the regulation are clear. Pursuant to the clear mandate of section 71(b) and section 1.71-1(e), Income Tax Regs., we have consistently held under section 71(b) that when a "payment actually made under the order is less than the amount specified in the decree, the payment which is made shall, to the extent of the sum payable for the support of the minor child, be considered as the payment for such support." Blyth v. Commissioner,21 T.C. 275, 279 (1953); Joslyn v. Commissioner,23 T.C. 126 (1954), affd. in part 230 F.2d 871 (7th Cir. 1956). [5]
In Blyth v. Commissioner, supra, a divorce order provided that the husband pay $ 100 a month to the ex-wife for her support and maintenance and $ 50 for the support and maintenance of their son. When their son entered a military school, the husband reduced his monthly payments to his ex-wife from $ 150 to $ 100 per month. He did not receive a court order modifying the divorce order. We held that *618 $ 50 of the monthly payment nevertheless constituted child support, not alimony. Therefore, we concluded that the ex-wife need not include $ 50 of the $ 100 monthly payment in income. Blyth v. Commissioner, supra at 279. Unlike most cases in which the full payments for alimony and child support were not made, in the case at bar petitioner's former wife acquiesced orally in the payment reductions. Had petitioner, an attorney, gone back to the divorce court for a modification of the decree, the result in this case may well have been different. In the absence of such a modification, we interpret the decree by its plain and unambiguous language to compel $ 150 a month in alimony and $ 200 a month child support for Jon. Under these circumstances, the plain language of section 71(b) requires *619 an allocation of the payments first to child support and second to alimony. Petitioners noted that petitioner's former wife included the $ 150 monthly payments in her income during both of the years in question, consequently, petitioners argued that they were entitled to the corresponding deduction. The deduction under section 215, however, is only for amounts which are includible in gross income under section 71. Those amounts considered child support under section 71(b) are not includible in gross income. Under the clear mandate of section 71(b), section 1.71-1(e), Income Tax Regs., and our case law, petitioner's payments under the divorce order for 1982 and 1983 must first be applied to child support. Therefore, we sustain respondent's disallowance of $ 1,800 alimony deduction in 1982 and $ 1,250 in 1983. Employee Auto Expense Deductions
Respondent disallowed employee auto business mileage claimed at the standard mileage rate totaling 45,000 miles and 23,000 miles in 1982 and 1983, respectively, because petitioners did not establish that any amount was for an ordinary and necessary business expense, or was for the purpose expended. At trial petitioners contended 1) *620 that the employee auto mileage expenses were incurred while performing ordinary and necessary business activities; 2) that some of the declared employee auto mileage expenses were really charitable auto mileage expenses even though during the course of the audit, respondent already allowed petitioners a deduction of 7,000 miles in each year as charitable mileage; 3) that some of the expenses were incidental, therefore petitioners need not substantiate; and 4) that petitioners' credibility as witnesses requires this Court to apply the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), even though petitioners did not substantiate or reconstruct for the Court any of the claimed mileage totaling 45,000 miles and 23,000 miles for 1982 and 1983, respectively. Petitioners reported wages for 1982 in the amount of $ 39,503 from petitioner Gary Dee Blair's employer, the U.S. Army, Corps of Engineers, and wages for 1983 in the amount of $ 42,669 from the same employer. They also reported $ 400 received as legal fees in 1983, from Viking Ship, Inc. Petitioners do not argue that any of the claimed automobile deductions resulted from employment with the U.S. Army. *621 Rather, they claim entitlement to the deductions because of their relationship with two corporate entities, Viking Ship, Inc. and Viking Ship Auxiliary, Inc., [6] (hereafter "Little Vikes"). Little Vikes was formed by petitioner June Blair in 1977 as a non-profit corporation. Little Vikes' original purpose was to run a cheerleading program for girls and later a gymnastic program for girls. The scope and activities of Little Vikes has increased substantially over the years, in great part due to the tireless efforts of petitioners. The space in which these activities were conducted was not satisfactory to the City of Omaha. Consequently, petitioner June Blair formed a profit corporation called Viking Ship, Inc., in May of 1978. Petitioner June Blair borrowed stock owned by her mother and purchased a building in July of 1978 which is now called the Viking Ship. The building, Viking Ship, was held in the name of the corporation. In addition, the corporate assets included gym equipment and furniture. According to petitioners, Little Vikes handled the activities *622 and Viking Ship, Inc., held the land and building. Returns of Viking Ship, Inc., indicate gross rentals from the building for each of the years 1978 through 1983. The corporate returns also indicate losses in each year. Petitioner June Blair was Treasurer of Viking Ship, Inc., in 1978, 1980, 1981, 1982 and 1983, and Chairman and Treasurer in 1979. Petitioner Gary Blair was Secretary in 1980, 1981, 1982 and 1983. The returns indicate that neither petitioner received compensation for their services nor an expense allowance during any of the years 1978 through 1983. Petitioners testified that much of their claimed business mileage relates to their activities in connection with Viking Ship, Inc. However, they have not claimed that they were employees of the corporation and there is nothing whatsoever in the record to indicate that they were employed by the corporation. [7] Simply put, they have not shown that the business of Viking Ship, Inc., was their business. Thus, in Noland v. Commissioner,269 F.2d 108, 111 (4th Cir. 1959), cert. denied 361 U.S. 885 (1959), affirming a Memorandum Opinion of this Court, it is said that: The business of *623 a corporation, however, is not that of its officers, employees or stockholders. Though the individual stockholder-executive, in his own mind, may identify his interest and business with those of the corporation, they legally are distinct, and, ordinarily, if he voluntarily pays or guarantees the corporation's obligations, his expense may not be deducted on his personal return. * * * See also Deputy v. du Pont,308 U.S. 488, 493 (1940); Leamy v. Commissioner,85 T.C. 798, 809 (1985). Consequently, any employee auto expense deductions belong to Viking Ship, Inc., the corporation, and not to petitioners. We believe that petitioners spent a great deal of time and energy on Viking Ship, Inc. That, however, standing alone cannot translate into a business deduction. In any event, petitioners have failed *624 to prove, other than by their vague and uncorroborated testimony, that they drove any miles at all in connection with Viking Ship, Inc. They stated that substantiation would have been too difficult because their personal lives completely commingled with their charitable works and their business lives. Therefore, they simply estimated their employee auto business mileage as 45,000 miles in 1982 and 23,000 miles in 1983. Respondent's determinations in the statutory notice of deficiency are presumptively correct, and petitioners bears the burden of proving their entitlement to the claimed deductions. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In this case petitioners failed to meet their burden of proof. We find that respondent's disallowances of the business mileage deductions were correct. Alternatively, petitioners contend that substantial amounts of their mileage deductions were in connection with their charitable activities in regard to the Little Vikes. The Little Vikes is an organization exempt under the provisions of section 501(c)(3) and has been held not to be a private *625 foundation. Petitioner June Blair was clearly a driving force in this organization and expended much time and energy on it. The miles which she drove on behalf of Little Vikes are subject to a deduction based on the charitable mileage rate of 9" per mile. Petitioner June Blair also incurred mileage in connection with her membership on the Omaha School Board. These miles are also deductible to petitioners. Respondent has recognized this by allowing petitioners a deduction for 7,000 miles in each of 1982 and 1983. Petitioners offered no substantiation in regard to any of their claimed local and travel mileage deductions. Although only applicable to local mileage, petitioners ask us to apply the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), which they categorize as a rule of indulgence, in estimating their mileage. As we stated in Vanicek v. Commissioner,85 T.C. 731, 742-743 (1985): While it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred ( Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930)), we must have some basis *626 on which an estimate may be made. Williams v. United States,245 F.2d 559 (5th Cir. 1957). * * * Any indulgence we might consider available to us under Cohan requires more information than mere flights of fancy. Respondent has allowed petitioners 7,000 charitable miles in each year. Petitioners are not entitled to more. Charitable Contributions
In 1982 petitioners claimed a cash contribution in the amount of $ 2,900. Petitioners substantiated and respondent allowed cash contributions totaling $ 1,327 as follows: Florence Christian Church
$ 60.00 Glad Tidings Church
109.00
World Outreach Church
35.00
Christian Childrens Fund
198.00
American Heart Association
65.20
Little Viking Athletic Assoc.
30.00
Estimated cash contributions
allowed based on oral  statements  200.00
Estimated 7,000 charitable
miles allowed based on  oral statements  (at $ .09 per mile)  630.00
Total                 [8] $ 1,327.00
Respondent disallowed unsubstantiated *627 contributions totaling $ 1,573. In 1983 petitioners claimed cash contributions in the amount of $ 2,950 and a non-cash contribution in the amount of $ 600. Petitioners substantiated and respondent allowed cash contributions totaling $ 931 as follows: Heart Association
$ 19.20                    World Outreach Church
25.00                   Florence Christian Church
40.00                   Prince of Peace Museum
16.50                   Estimated cash contributions
allowed based on oral  statements  200.00                   Estimated 7,000 charitable
miles allowed based on  oral statements  (at $ .09 per mile)  630.00                   Total               $ 930.70 (rounded to $ 931)
Respondent disallowed unsubstantiated contributions totaling $ 2,619. However, during trial preparation petitioners produced 1983 checks to the Christian Children's Fund totaling $ 186 and respondent concedes that petitioners are entitled to an additional $ 186 contribution deduction for 1983. Petitioners' statutory *628 basis for a deduction turns upon the provisions of section 170(a) which allows a deduction for "any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year." If a taxpayer claims charitable deductions, he or she must substantiate. Section 1.170A-13(d)(1), Income Tax Regs., mandates substantiation for charitable contribution deductions made in 1982. Taxpayers must state in their returns the name of each organization to which contributions were made and the amount and the date of actual payment. Sec. 1.170A-13(d)(1), Income Tax Regs. If a taxpayer makes non-cash contributions, then he or she must state the kind of property contributed, the method of valuation, and whether or not the amount of the contribution was reduced under section 170(e). Sec. 1.170A-13(d)(1), Income Tax Regs.
Section 1.170A-13(a)(1), Income Tax Regs., requires substantiation for charitable contribution deductions beginning after December 31, 1982. A taxpayer must maintain one of the following: (1) a cancelled check; (2) a receipt or letter from the donee charitable organization showing the name of the donee, and the date and the amount of the contribution; *629 or (3) other reliable records showing the name of the donee, and the date and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs. If a taxpayer makes non-cash contributions, then he or she must maintain a receipt from the donee showing the name of the donee, the date and the location of the contribution and a reasonably sufficient description of the property. Sec. 1.170A-13(b)(1), Income Tax Regs. Petitioners here have no proof of the disallowed charitable contributions. The language of section 1.170A-13, Income Tax Regs., is clear and unambiguous. Petitioners must substantiate their claimed charitable contribution deductions. Despite the clear and unambiguous language of section 1.170A-13, Income Tax Regs., petitioners point to their active charitable lifestyle and ask us, in the name of charity, to believe that they did contribute the claimed amounts. Once again, petitioners rely on Cohan v. Commissioner, supra.The clear and unambiguous language of section 1.170A-13, Income Tax Regs., states that petitioners must substantiate. Consequently, in light of petitioners' failure to substantiate, we uphold respondent's disallowances. To give effect *630 to the concessions on the part of petitioners and respondent, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Petitioners agreed to increases in income as follows: interest income of $ 13 in 1982 and state tax refund of $ 974 in 1983. Further, they agreed to the disallowance of interest expense deductions of $ 30 and $ 5,512 in 1982 and 1983, respectively. Respondent conceded that petitioners are entitled to deduct an additional charitable contribution of $ 186 in their 1983 year for a contribution to the Christian Children's Fund. ↩
3. Adjustments concerning medical deductions and general sales tax constitute automatic adjustments that will vary depending on final disposition of this case.↩
4. The record does not reveal the existence of 12 alimony and child support check payments, only 11.↩
5. See also Bodine v. Commissioner,T.C. Memo. 1984-143; Hau v. Commissioner,T.C. Memo. 1983-471; Marshall v. Commissioner,T.C. Memo. 1976-34; Ross v. Commissioner,T.C. Memo. 1972-122; Lindsay v. Commissioner,T.C. Memo. 1970-6; Beatty v. Commissioner,T.C. Memo. 1967-200↩.
6. In September of 1983 the name of this organization was changed from Vikes Athletic Association Auxiliary, Inc.↩
7. In 1982 and 1983 petitioners indicated on Form 2106 that Viking Ship, Inc., was their employer. However, Viking Ship, Inc., a for-profit corporation, did not pay salaries to petitioners. In addition, petitioners did not report any salary from Viking Ship, Inc., in 1982 and only minimum business income of $ 400 in 1983 for legal services.↩
8. Total contributions for 1982 equal $ 1,327.20. The stipulation of facts states that total contributions equal $ 1,327, a rounded-off figure.↩